COMMONWEALTH of Pennsylvania, Appellee

v.

Mark WALLACE, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

Mark Green, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

Mark Green a/k/a Mark Wallace, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

Mark Wallace, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

Mark Wallace, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

Mark Wallace, Appellant.

Commonwealth of Pennsylvania, Appellee

v.

James Smith, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Mark Wallace, Appellant.

Superior Court of Pennsylvania.

Submitted July 5, 2011.
Filed May 25, 2012.

Mark Wallace, appellant, pro se.

Hugh J. Burns, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, LAZARUS and PLATT*, JJ.

OPINION BY SHOGAN, J.:

Appellant, Mark Green a/k/a Mark Wallace a/k/a James Smith, appeals *pro se* from orders denying his motions for expungement of charges contained in multiple non-conviction arrest records.[1] We vacate and remand.

Appellant's criminal record spans 14 pages and contains 19 arrests by Philadelphia police. Between February 15, 1988 and January 29, 1992, Appellant faced various and sundry charges, such as: unauthorized use of a vehicle, theft by unlawful taking, receiving stolen property, burglary, aggravated assault, carrying a firearm without a license, carrying a firearm on a public street or property, resisting arrest, criminal trespass, unsworn falsification to authorities, securing documents by decep-

---

* Retired Senior Judge assigned to the Superior Court.

1. We observe that a petition for expungement does not fall within the ambit of the PCRA. *Commonwealth v. Lutz*, 788 A.2d 993, 996 n. 7 (Pa.Super.2001). Thus, Appellant's claims are not subject to the eligibility requirements or time constraints of the PCRA, and there is no impediment to our review.

tion, using altered, forged or counterfeit documents, passing bad checks, theft of services, retail theft, robbery, conspiracy, terroristic threats, reckless endangerment, simple assault, forgery, credit card fraud. The record indicates that some of the charges during this period were transferred to family court, some were transferred to the juvenile division, some were held for court, and others were dismissed. The record does not indicate that any of the charges terminated in acquittals or convictions.

Between May 14, 1992 and December 2007, state and federal authorities arrested Appellant and charged him with, *inter alia,* the following offenses: theft by deception, mail, bank, and credit card fraud, possessing and uttering a forged security, forgery, robbery, threatening a federal law enforcement officer, possessing an instrument of crime, Public Assistance Act violations, Medicaid fraud, conspiracy to commit arson, kidnapping, endangering the welfare of children, unlawful restraint, false imprisonment, causing catastrophe, arson, criminal mischief, aggravated assault, reckless endangerment, terroristic threats, simple assault, possessing instruments of crime, theft by receiving stolen property, theft by unlawful taking, unau-

thorized use of a motor vehicle, fleeing or attempting to elude an officer, giving false identification to an officer, conspiracy, aggravated identity theft, and unauthorized use of an access device. The record indicates that some of these charges resulted in guilty pleas, acquittals, and convictions, while others were held for court, *nolle prosequied,* dismissed, or withdrawn.

Between April 2010 and January 2011, while incarcerated in a federal detention center, Appellant filed a series of motions in the Philadelphia Court of Common Pleas, seeking the destruction of fingerprints, photographs, and arrest records associated with charges that did not result in convictions.[2] In each instance, Appellant claimed that the records caused him "to suffer loss of job opportunity, and embarrassment and irreparable harm." Petition to Expunge Criminal Record (1895 EDA 2010), 5/21/10, at ¶ 4. The trial court denied the motions, and Appellant filed timely appeals. We consolidated the eight appeals, all of which raise the same issues:

1. The trial judge abused his discretion in denying Appellant's motion to expunge arrest record where the charges were to be dismissed and the Commonwealth did not carry it's burden to justify retention of the

---

**2.** At Appeal Nos. 1631 EDA 2010 (No. MC–51–CR–0127801–1992) and 2166 EDA 2010 (No. MC–51–CR–1157451–1988), Appellant filed motions on April 15, 2010; the trial court denied them on May 20, 2010.

At Appeal Nos. 1894 EDA 2010 (No. MC–51–CR–1059771–1998) and 1895 EDA 2010 (Nos. MC–41–CR–0412481–1990; MC–51–CR–0512751–1992; MC–51–CR–0512771–1992; MC–51–CR–0020961–2007, MC–51–CR–0007002–2007; MC–51–CR–0001841–2007; MC–51–CR–0911491–1988; MC–51–CR–0904091–1988; and CP–51–CR–0204911–2001), Appellant filed motions on May 13, 2010, and May 21, 2010, respectively; the trial court denied them on June 28, 2010.

At Appeal No. 2850 EDA 2010 (No. CP–51–CR–1109501–1998), Appellant filed a motion

on April 22, 2010; the trial court denied it on July 12, 2010.

At Appeal Nos. 2851 EDA 2010 (Nos. MC–51–CR–1028961–1991 and MC–51–CR–1028971–1991) and 3026 EDA 2010 (No. MC–51–CR–0719321–1991), Appellant filed motions on September 1, 2010; the trial court denied them on October 6, 2010.

At Appeal No. 766 EDA 2011 (Nos. MC–51–CR–0218521–1988; CP–51–CR–0332611–1988; MC–51–CR–0403331–1988; MC–51–CR–0632521–1988; MC–51–CR–0632531–1988; MC–51–CR–0911481–1988; MC–51–CR–0920171–1988), Appellant filed a motion on January 19, 2011; the trial court denied it on February 22, 2011.

arrest record and the court abused it's discretion in not considering all of the factors set out and the court improperly applied Wexler in it's 1925(b) opinion by (i) wrongly shifting the burden to the defendant (ii) and wholly ignoring [ (]4) of the Wexler factors each of which did strongly supported expungement.

2. The trial court abused it's discretion when it failed to hold a hearing and it denied the defendant due process of law under the Fourteenth Amendment of the U.S. Constitution.

Appellant's Brief (1631 EDA 2010) at v (full capitalization omitted; punctuation and grammatical errors in original).[3]

In each appeal, Appellant contends the trial court improperly denied his expungement motions because the Commonwealth failed to sustain its burden of demonstrating its superior interest in preserving the arrest records. Appellant's Brief (1631 EDA 2010) at vii. Appellant also claims the trial court erred in not conducting a hearing. *Id.* at 6. Thus, Appellant requests that we reverse the trial court's orders and remand with a directive that the trial court conduct a hearing and/or expunge his non-conviction arrest records. Appellant's Brief (1631 EDA 2010) at 7.

■ "The decision to grant or deny a request for expungement of an arrest record lies in the sound discretion of the trial judge, who must balance the competing interests of the petitioner and the Commonwealth. We review the decision of the trial court for an abuse of discretion." *Commonwealth v. Waughtel,* 999 A.2d 623, 624–25 (Pa.Super.2010).

■ Our Supreme Court recently reiterated the law regarding expungement of criminal records as follows:

There is a long-standing right in this Commonwealth to petition for expungement of a criminal arrest record, a right that is adjunct of due process. *Carlacci v. Mazaleski,* [568 Pa. 471, 798 A.2d 186, 188 (Pa.2002).... Judicial analysis and evaluation of a petition to expunge depend upon the manner of disposition of the charges against the petitioner. When an individual has been convicted of the offenses charged, then expungement of criminal history records may be granted only under very limited circumstances that are set forth by statute. 18 Pa.C.S. § 9122; *Hunt v. Pennsylvania State Police,* 604 [603] Pa. 156, 983 A.2d 627, 633 (2009). When a petitioner has been tried and acquitted of the offenses charged, we have held that the petitioner is "automatically entitled to the expungement of his arrest record." *Commonwealth v. D.M.,* 548 Pa. 131, 695 A.2d 770, 772–73 (1997). When a prosecution has been terminated without conviction or acquittal, for reasons such as *nolle prosse* of the charges or the defendant's successful completion of an accelerated rehabilitative disposition program ("ARD"), then this Court has required the trial court to "balance the individual's right to be free from the harm attendant to maintenance of the arrest record against the Commonwealth's interest in preserving such records." *Commonwealth v. Wexler* [494 Pa. 325], 431 A.2d 877, 879 (Pa.1981); *D.M., supra* at 772 ("We reiterate the authority of *Wexler* and the balancing test approved therein as the means of deciding petitions to expunge the records of all

3. Appellant filed almost identical briefs in each of the eight appeals. Both Appellant and the trial court satisfactorily fulfilled the requirements of Pennsylvania Rule of Appellate Procedure 1925 in each appeal.

arrests which are terminated without convictions except in cases of acquittals.").

To aid courts in applying the balancing test for expungement, we also adopted in *Wexler* the following nonexhaustive list of factors that the court should consider:

These factors include [1] the strength of the Commonwealth's case against the petitioner, [2] the reasons the Commonwealth gives for wishing to retain the records, [3] the petitioner's age, criminal record, and employment history, [4] the length of time that has elapsed between the arrest and the petition to expunge, and [5] the specific adverse consequences the petitioner may endure should expunction be denied.

*Wexler, supra* at 879 (citation omitted).

We have emphasized that in applying the balancing test and considering the above factors, the court must analyze the particular, specific facts of the case before it. *Id.* at 880–81. The mere assertion by the Commonwealth of a general interest in maintaining accurate records of those accused of a crime does not outweigh an individual's specific, substantial interest in clearing his or her record. *Id.* at 881–82.

*Commonwealth v. Moto,* 611 Pa. 95, 101–03, 23 A.3d 989, 993–994 (2011). Moreover, "when a charge is withdrawn or *nolle prosequied,* the burden is *always* upon the Commonwealth to demonstrate why an arrest record should be retained." *Commonwealth v. A.M.R.,* 887 A.2d 1266, 1269 (Pa.Super.2005) (emphasis in original; citation omitted).

█ Appellant's first issue essentially alleges that the Commonwealth failed to meet its burden of showing that its interests in preserving Appellant's non-conviction arrest records outweighed Appellant's

right to be free from harm arising from the maintenance of those records and the trial court failed to conduct a proper *Wexler* balancing test. The Commonwealth opposes expungement based on Appellant's substantial record of criminal convictions, his history of using false names, and his current incarceration in a federal detention center. Additionally, the Commonwealth argues that it needs to maintain Appellant's arrest records, which include his fingerprints, in order to identify him in the event he commits an offense in prison or in violation of parole. Commonwealth's Brief (766 EDA 2011) at 10.

In response to Appellant's allegation that the trial court did not properly perform the *Wexler* balancing test, the trial court stated:

Several of the *Wexler* factors are inapposite in this case. The Commonwealth's readiness to try [Appellant] for the charged offenses, [Appellant's] age and employment background, and the period of time between the arrests and the expungement petition neither support nor impugn denial of the petition, and thus should be afforded little weight.

The remaining *Wexler* factors, namely the Commonwealth's basis for retaining the records, [Appellant's] criminal record, and the specific adverse consequences [Appellant] may encounter if expungement is denied, weigh heavily in favor of a denial of the expungement. The Commonwealth has a compelling interest in retaining these records because [Appellant] is currently incarcerated and his records may be needed for use in penalization if he commits any offenses while in prison or on parole. Specifically, if [Appellant] were to commit a crime while in prison, his arrest record will be relevant in fashioning a plea or a sentence. Further, if [Appellant] is paroled

and violates his parole, his arrest record would be pertinent to his parole hearing. By comparison, it is unlikely that [Appellant] will encounter any specific negative repercussions as a result of the denial of his petition because the rest of his significant criminal record has not been expunged. The Commonwealth's interest in the denial of the petition far outweighs [Appellant's] interest in its allowance.

The propriety of the denial of [Appellant's] petition becomes even more apparent when the *Wexler* factors are construed with the purpose underlying expungement. Expungement is intended to serve as a means of protecting an individual from the barriers and stigma attendant to an arrest record, and granting [Appellant's] expungement petition would serve neither of these aims. [Appellant] is currently serving time on a federal prison sentence. Granting this expungement would neither enhance [Appellant's] opportunities to improve his life nor further his ability to cast off the stigma of these charges because the rest of [Appellant's] arrest record, as well as the record of his convictions, still exists. Because of [Appellant's] numerous other arrests and convictions, the expungement he seeks will have little to no effect on his ability to improve his life or his reputation.

Trial Court Opinion, 8/9/10, at 2–3.[4]

We note that, in applying the *Wexler* factors, the trial court considered Appellant's criminal history, the Commonwealth's reasons for maintaining the arrest records, and the purpose underlying expunction. Specifically, the trial court found that the Commonwealth's interest in maintaining accurate records in the event Appellant reoffends and Appellant's extensive history of criminal convictions were enough to overcome any unparticularized benefit Appellant hoped to secure by expunction. Notably, the record contains specific evidence of Appellant's convictions and his use of aliases. Moreover, although Appellant argues the non-conviction arrest records prejudice his opportunities for employment and finding a significant other, Appellant's imprisonment will preclude him from seeking employment or a relationship for a considerable amount of time. Hence, at first glance, the record appears to support the trial court's denial of expungement. However, upon closer examination of the record at hand, we are compelled to vacate the trial court's order and remand for further proceedings.

 Whether a non-conviction arrest record should be expunged depends on how the charges terminated. The difficult cases fall between the extremes of a conviction and an acquittal; such cases require application of the *Wexler* factors. *See Commonwealth v. Hanna,* 964 A.2d 923, 925 (Pa.Super.2009) (discussing cases where the facts fall somewhere between conviction of a crime and complete acquittal). Where a defendant pleads guilty and the Commonwealth agrees to dismiss charges as part of the plea agreement, a defendant is normally not entitled to expungement of the dropped charges based on contract principles. *Commonwealth v. Lutz,* 788 A.2d 993 (Pa.Super.2001). Where charges are terminated for reasons other than acquittal, such as *nolle prose-*

4. The trial court filed almost identical opinions in each of the eight appeals: 1631 EDA 2010—Trial Court Opinion, 8/9/10; 1894 EDA 2010—Trial Court Opinion, 8/26/10; 1895 EDA 2010—Trial Court Opinion, 8/24/10; 2166 EDA 2010—Trial Court Opinion, 8/24/10; 2850 EDA 2010—Trial Court Opinion, 10/15/10; 2851 EDA 2010—Trial Court Opinion, 11/17/10; 3026 EDA 2010—Trial Court Opinion, 1/5/11; 766 EDA 2011—Trial Court Opinion, 4/14/11.

*qui* based on insufficient evidence or successful completion of ARD, expunction should be granted. *Commonwealth v. V.G.,* 9 A.3d 222 (Pa.Super.2010). Where a case terminates in conviction and acquittal, the Commonwealth may avoid expunction "when it demonstrates to the trial court that expungement is impractical or impossible under the circumstances." *Commonwealth v. Rodland,* 871 A.2d 216, 219 (Pa.Super.2005). Where charges against a defendant are withdrawn, he is entitled to expunction if the Commonwealth fails to sustain its burden of justifying retention of the arrest record. *Commonwealth v. A.M.R.,* 887 A.2d 1266 (Pa.Super.2005). Where a record is silent as to how charges terminated, we have remanded to the trial court to make a record. *See Hanna,* 964 A.2d 923 (remanding to trial court to make record as to whether charges were *nolle prossed* based upon lack of evidentiary support or whether the charges were dropped in exchange for a plea); *Rodland,* 871 A.2d 216 (same).

Here, rather than belabor each individual appeal, we observe broadly that the official record in this matter came to us in six incomplete, disorganized parts and appears to cover 19 arrests, 37 criminal action numbers, and approximately 228 charges as of May 10, 2010.[5] As of that date, we estimate that the charges had terminated in four guilty pleas, four convictions, sixteen acquittals, five sustained demurrers, fourteen withdrawals, fifty-three dismissals, forty-four *nolle prosequi,* three transfers to family court, thirty transfers to juvenile division, and fifty-five held for court. The record does not indicate whether the *nolle prossed* and with-

drawn charges were based upon a lack of evidentiary support or whether the charges were dropped in exchange for a plea. Moreover, the record does not indicate why some charges were dismissed. Yet, the Commonwealth argues generally—and the trial court agrees—that none of the records should be expunged in light of Appellant's extensive criminal record and the possibility that he might reoffend.

Superficially, the record depicts Appellant as a very active career criminal; for that reason, we understand the Commonwealth's arguments and the trial court's orders as swift and expedient. However, this case strikes us as the opposite of giving "volume discounts" at sentencing. *See Commonwealth v. Anderson,* 538 Pa. 574, 579, 650 A.2d 20, 22 (1994) (explaining that a main concern regarding merger is to avoid giving criminals "volume discount" on crime); *Commonwealth v. Hoag,* 445 Pa.Super. 455, 665 A.2d 1212, 1214 (1995) (stating appellant is not entitled to "volume discount" for his crimes by having all sentences run concurrently). The Commonwealth and trial court appear to seek a volume penalty based on the sheer length of Appellant's arrest record and on speculation that he may re-offend in prison or in Philadelphia County. Yet, as Appellant points out, Pennsylvania appellate courts have rejected the "general record-keeping interest" and "future case" arguments relied on by the Commonwealth and the trial court. *See D.M.,* 663 A.2d at 793 ("[T]he Commonwealth's generalized concern for retention of records . . . is not a sufficient basis for denying an expunction petition . . . nor is the retention of records to inhibit further crimes of the same sort a com-

---

5. Several parts of the certified record contain a letter from the Court of Common Pleas supervisor informing the Superior Court Prothonotary that the particular "case is missing from the Clerk of Courts File Room. Accord-

ingly, a duplicate record was prepared from photostats of available court documents and notes of testimony." Notice, 10/18/10 (2850 EDA 2010).

pelling reason."); *Wexler*, 494 Pa. at 335, 431 A.2d at 882 (rejecting argument that, should defendant "ever be charged with criminal activity in the future, 'the Commonwealth should have the right for the judge, or judges, whoever would consider the case, to be able to review what she's done throughout her whole life.'"); *A.M.R.*, 887 A.2d at 1270 (rejecting Commonwealth's reliance on "future case" argument as unpersuasive).

Substantively, and depending on the circumstances surrounding their termination, some of Appellant's non-conviction arrest records may be eligible for expungement under the laws of Pennsylvania. However, we cannot make that determination based on the record at hand. Therefore, we remand to the trial court for "a clarification of the record as much as a clarification of the reasons for the trial court decision." *Rodland*, 871 A.2d at 222. Toward that purpose, "we cannot suggest strongly enough that all parties provide a comprehensive list of each criminal action number in question with the disposition of each charge contained therein." *Id.* The trial court should then apply the *Wexler* factors, balancing Appellant's right to be free from the harm attendant to maintenance of the arrest records against the Commonwealth's interest in preserving such records, to determine in each particular case whether justice requires expungement. *Waughtel*, 999 A.2d at 625; *A.M.R.*, 887 A.2d at 1268.

 Next, Appellant complains that the trial court failed to conduct a hearing on the expunction motions in violation of his due process rights. Relying on *Commonwealth v. Maxwell*, 737 A.2d 1243 (Pa.Super.1999), and *Rodland*, 871 A.2d 216, Appellant claims that he was entitled to a hearing, at which he would "present evidence in his favor and witnesses in his favor." Appellant's Brief (1631 EDA 2010)

at 6. Appellant also challenges the trial court's denial based on "the motion for expungement alone," because the motion was a "standard form" which he was expressly prohibited from changing. *Id.*

Individuals have the right, as an adjunct to due process, to seek expungement of their criminal records which can be effectuated through a hearing.[...] Punishment of the innocent is the clearest denial of life, liberty and property without due process of law. To remedy such a situation, an individual must be afforded a hearing to present his claim that he is entitled to an expungement—that is, because an innocent individual has a right to be free from unwarranted punishment, a court has the authority to remedy the denial of that right by ordering expungement of the arrest record.

*Maxwell*, 737 A.2d at 1245 (citation omitted); *accord Rodland*, 871 A.2d at 221 ("*Maxwell* makes clear that [an] Appellant is at least entitled to a hearing" to determine if charges were *nolle prossed* pursuant to a plea agreement).

Having determined that the record at hand requires supplementation and clarification with regard to the circumstances surrounding Appellant's non-conviction arrest records, we conclude that a hearing for this purpose is necessary. Accordingly, while making no determination as to whether expungement is warranted, we vacate the orders denying the motions for expungement and remand for a hearing on which non-conviction arrests records, if any, are eligible for application of the *Wexler* factors, and, based on application of the *Wexler* factors, which non-conviction arrests records, if any, should be expunged.

As a final housekeeping matter, we address three outstanding motions. In its motion to provide this Court with intervening legal authority, the Commonwealth

brings to our attention two cases: (1) the Pennsylvania Supreme Court's decision in *Commonwealth v. Moto,* 611 Pa. 95, 101–04, 23 A.3d 989, 993–994 (2011), which reversed our decision in *Commonwealth v. V.A.M.,* 980 A.2d 131 (Pa.Super.2009), upon which Appellant relies; and (2) the federal district court's decision in *United States v. Mark Green,* slip copy, No. 08–44 (E.D. Pa., filed May 16, 2011), which denied Appellant's motion to arrest judgment of his convictions, motion to dismiss his indictment, motion for acquittal, and motion for a new trial. We deny the Commonwealth's motion as moot.

Next, we address Appellant's motion to deny the Commonwealth's request to consolidate. Given the fact that we consolidated the appeals by order dated October 28, 2011, we deny Appellant's motion as moot.

Finally, Appellant filed a motion to strike the pleadings filed by the Commonwealth as untimely. We deny this motion.

Orders vacated. Case remanded for further proceedings. Jurisdiction relinquished.