PRESENT: Lemons, C.J., Goodwyn, Mims, Powell, Kelsey, and McCullough, JJ., and
Russell, S.J.

A.R.A.[1]

v. Record No. 170199

OPINION BY
STEPHEN R. McCULLOUGH
March 1, 2018

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
AND JAMES CITY COUNTY
Randolph T. West, Judge Designate

A.R.A. appeals from a final order denying her petition to expunge a felony arrest record.

The trial court declined to expunge the record on the basis that the existence of this record does

not and may not cause A.R.A. a manifest injustice. We conclude that the trial court abused its

discretion in denying A.R.A.'s petition. Accordingly, we will reverse the judgment below and

remand for entry of an order expunging A.R.A.'s felony arrest record.

BACKGROUND

In 2014, A.R.A. was charged with a felony, assault and battery of a law enforcement

officer, under Code § 18.2-57. She was also charged with two misdemeanors: falsely

identifying oneself to law enforcement, in violation of Code § 19.2-82.1, and public swearing or

intoxication, in violation of Code § 18.2-388. The charges stemmed from her behavior after she

drank to excess. Before A.R.A.'s arraignment, the Commonwealth's Attorney amended the

charge to disorderly conduct, in violation of Code § 18.2-415. A.R.A. pled guilty to the

disorderly conduct charge. The trial court found her guilty of the offense, and imposed a $200

fine, with six months in jail, suspended, conditioned on three years of "good behavior, keeping

---

[1] We employ the petitioner's initials. A published opinion employing her full name
would be counterproductive to the object of the expungement petition.

the peace, obeying this order and paying fines and costs." The Commonwealth withdrew the remaining misdemeanor charges by nolle prosequi. A.R.A. has no criminal history separate from this event. She went on to graduate from college with a 3.8 grade point average.

In 2015, A.R.A. filed a petition seeking to expunge the records of both her felony arrest and the withdrawn misdemeanor charges. At a hearing on the petition, A.R.A. testified that she currently works for a large media company and would like to work in the field of children's entertainment. She described the field as competitive. She also has contemplated obtaining an M.B.A. or a law degree to advance her career. She is aware of the character and fitness requirements to sit for the bar exam and the necessary disclosure to law schools of an applicant's prior charges and convictions.

Before her current employment, A.R.A. completed several internships to build her resume. A.R.A.'s disclosure of her criminal history delayed the start date for one of her internships. She further testified that she interned with a foundation and is interested in obtaining a permanent position at the foundation. To intern with this foundation, she had to undergo a background check that required the disclosure of all charges and convictions. She explained that she decided not to apply for several volunteer programs that work with children because she knew she would have to disclose her record. A.R.A.'s fear is that the positions she is applying for are very competitive and that her arrest record might serve as a disqualifier. She explained that she did not want her career to suffer and did not want the arrest record "to define [her] as a person today."

The Commonwealth did not dispute A.R.A.'s evidence concerning her career interests or her interest in volunteer work. It chiefly argued that A.R.A. was ineligible for expungement.

The circuit court agreed that the misdemeanor arrests for falsely identifying oneself to law enforcement and public swearing or intoxication should be expunged. The court held that the felony arrest, however, should not be expunged because "the continued existence and possible dissemination of information relating to the arrest of Petitioner on this charge does not cause and may not cause circumstances which constitute a manifest injustice to the Petitioner." In its discussion from the bench, the court focused on the facts surrounding the arrest.

ANALYSIS

Virginia law permits a person charged with a criminal offense to seek the expungement of police and court records relating to a criminal charge if the person has been acquitted or a "nolle prosequi is taken or the charge is otherwise dismissed." Code §§ 19.2-392.2(A)(1) and (2). The dispositive question in this case is whether the petitioner established that the continued existence and possible dissemination of a felony arrest record would constitute an actual or a potential "manifest injustice," the statutory standard set forth in Code § 19.2-392.2(F).

I.      THE FELONY CHARGE WAS "OTHERWISE DISMISSED."

The "threshold determination to be made by the trial court on considering any petition for expungement . . . is whether the petitioner has a right to seek expungement of those records under an applicable provision of Code § 19.2-392.2(A)." *Daniel v. Commonwealth*, 268 Va. 523, 530, 604 S.E.2d 444, 448 (2004). The trial court did not address this point of law. We conclude that A.R.A.'s felony arrest record qualifies as a charge that was "otherwise dismissed" under Code § 19.2-392.2(A), and, therefore, she is eligible to seek expungement.

In *Dressner v. Commonwealth*, 285 Va. 1, 736 S.E.2d 735 (2013), we reasoned that when a criminal charge is amended to a separate and unrelated charge, and the elements of the amended charge are not subsumed within the original charge, the petitioner occupies "the status

3

of innocent" with respect to the original charge.  As such, the petitioner qualifies "under the expungement statute as a person whose charge has been 'otherwise dismissed.'"  *Id.* at 7, 736 S.E.2d at 738 (citation omitted).  In contrast, if the petitioner was charged with a felony and is convicted of a lesser-included misdemeanor, the petitioner does not occupy the "status of innocent" for purposes of expungement.  *Necaise v. Commonwealth*, 281 Va. 666, 669, 708 S.E.2d 864, 866 (2011).

A.R.A. was charged with felony assault and battery, and the Commonwealth amended the charge to misdemeanor disorderly conduct.  "An offense is not a lesser-included offense of a charged offense unless all its elements are included in the offense charged."  *Commonwealth v. Dalton*, 259 Va. 249, 253, 524 S.E.2d 860, 862 (2000).  A person is guilty of disorderly conduct under Code § 18.2-415 when:

> with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> A.  In any street, highway, public building, or while in or on a public conveyance, or public place engages in conduct having a direct tendency to cause acts of violence by the person or persons at whom, individually, such conduct is directed.

The common law crime of assault required an attempt or offer committed with an intent to inflict bodily harm coupled with the present ability to inflict such harm.  *Hardy v. Commonwealth*, 58 Va. (17 Gratt.) 592, 600-01 (1867).  The common law tort of assault could be completed if the tortfeasor engaged in actions intended to place the victim in fear of bodily harm and created a well-founded fear in the victim.  *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003).  Over the years, Virginia has merged the common law crime and tort of assault.  Today, a criminal assault occurs when either set of elements is proved.  *Carter v. Commonwealth*, 269 Va. 44, 46-47, 606 S.E.2d 839, 841 (2005).

4

Each statute contains an element that is not found in the other. Therefore, disorderly conduct is not a lesser included offense of felony assault and battery of a police officer. As a consequence, the felony assault charge was "otherwise dismissed" under Code § 19.2-392.2(A)(2), and A.R.A. is eligible to seek expungement of that record.

II.   THE PETITIONER'S UNREBUTTED EVIDENCE ESTABLISHED THAT THE CONTINUED EXISTENCE AND POSSIBLE DISSEMINATION OF HER ARREST RECORD COULD CONSTITUTE A "MANIFEST INJUSTICE."

A.   When a petitioner "occupies the status of innocent," the facts of the alleged crime are irrelevant to the resolution of the expungement petition.

As noted above, under our decision in *Dressner*, the petitioner "occupies the status of innocent." *Id.* at 7, 736 S.E.2d at 738. Revisiting the underlying facts of the alleged crime cannot be reconciled with this holding. A petitioner in this circumstance cannot simultaneously occupy the status of innocent and be required to prove her actual innocence of a crime the Commonwealth declined to prosecute.

The purpose of a criminal trial is to prove factual guilt or innocence and to impose punishment. The purpose of expungement is to determine whether to expunge certain records. The focus of the expungement hearing ought to be on the impact of an existing record, not a retrial of a charge the Commonwealth elected not to prosecute. *See* Code § 19.2-392.1 (statement of policy stating General Assembly's finding that "arrest records can be a hindrance to an innocent citizen's ability to obtain employment, an education and to obtain credit."); Code § 19.2-392.2(F) (hearing can be held to determine whether "the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice to the petitioner.").

For these reasons, we conclude that the manifest injustice standard in this instance is forward-looking, rather than backward-looking. The inquiry turns on whether the continued

5

existence of the record will or may cause the petitioner a manifest injustice in the future. The inquiry is not backward-looking with respect to the facts of the alleged crime. There is an appropriate symmetry to this conclusion. A petitioner may not seek to adduce facts at an expungement hearing to prove his innocence, *Daniel*, 268 Va. at 531, 604 S.E.2d at 448. The converse ought to hold true: the Commonwealth may not introduce facts to establish the petitioner's guilt of an offense in an expungement hearing when the Commonwealth elected not to prosecute the petitioner for a particular offense.[2]

B.      The standard of review.

We review a trial court's decision to grant or deny expungement under Code § 19.2-392.2(F) under an abuse of discretion standard. The scope of that discretion, however, is restricted by the forgiving standard that the statute sets forth. The statute provides that the petition should be granted if the petitioner, who bears the burden of proof, can establish that "the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice to the petitioner." Code § 19.2-392.2(F).

The phrase "manifest injustice" appears in a number places in the Code. *See* Code § 8.01-692 (requiring a court to deny in forma pauperis status to frivolous inmate litigators unless the court "determines that it would be manifest injustice to deny in forma pauperis status"); Code § 15.2-2136(4), Code § 15.2-3207; Code § 15.2-3525(6); Code § 15.2-3806(6), and Code § 15.2-3906 (all allowing a special court overseeing certain local government matters to "make an

---

[2] Our holding is limited to the circumstance, like the one here and the one we addressed in *Dressner*, where the Commonwealth has elected to proceed on a charge other than the one for which the petitioner was arrested. We express no opinion as to whether a petitioner similarly "occupies the status of innocent" for purposes of expungement following a successful suppression motion or speedy trial dismissal.

6

appropriate order which will control the subsequent conduct of the case unless modified before or during the trial or hearing to prevent manifest injustice"); Code § 19.2-296 (permitting withdrawal of a guilty plea to correct "manifest injustice"); Code § 20-60.6 and Code § 63.2-1917 (allowing a party to challenge a child support enforcement order "on the grounds that he did not receive the notice and enforcement of the order would constitute manifest injustice"); Code § 20-107.1(B) (barring spousal support on the grounds of adultery unless "the court determines from clear and convincing evidence, that a denial of support and maintenance would constitute a manifest injustice"); Code § 32.1-174.1(B) (compelling a court to order forfeiture of a bond or escrow account upon revocation of a permit for the construction of waterworks, "unless the court finds the forfeiture would result in manifest injustice"); Code § 46.2-410.1(A) (permitting a petition for review of the suspension of a driver's license in cases of a manifest injustice). None of the statutes that employ the language "manifest injustice" contain the phrase "causes *or may cause* circumstances" which constitute a manifest injustice.[3] By employing the word "may," the General Assembly plainly signaled that a petitioner need not show actual prejudice. Code § 19.2-392.2(F). Instead, the statute contemplates expungement when a petitioner establishes a reasonable possibility of a manifest injustice.

In the "Statement of Policy" for the chapter of the Code governing expungement, the General Assembly found that "arrest records can be a hindrance to an innocent citizen's ability to obtain employment, an education and to obtain credit." Code § 19.2-392.1. A citizen who

---

[3] Rule 5:25 and Rule 5A:18 contain an exception to the requirement of a contemporaneous objection, the "ends of justice" exception. Although the phrase "ends of justice" is similar to the phrase "manifest injustice," there is a key difference: the rules do not contain the "may" language found in the expungement statute. Moreover, the purpose animating these rules also differs. The "ends of justice" exception has been applied sparingly to, among other things, prevent gamesmanship and discourage poor advocacy. Those concerns do not apply to the expungement statute.

occupies the status of innocent should not face the prospect of hindrance in employment, housing or credit from a government arrest record. A reasonable possibility of a hindrance to obtaining employment, an education, or credit can thus serve as a basis for a finding of manifest injustice.

Although the "manifest injustice" standard is permissive, it does not open wide the door of expungement to all comers. Accordingly, trial courts possess limited discretion to deny such petitions. A person with a lengthy unexpungeable criminal record will generally stand on a different footing with respect to showing a possible "manifest injustice." For such a person, even if an isolated arrest record is expunged, the remaining criminal history remains available to prospective employers and others. It makes little sense to compel overburdened law enforcement agencies to devote time to redacting records when the exercise will yield no tangible benefit to the petitioner. In addition, fantastical or exaggerated assertions of a potential adverse impact on career prospects, credit, housing, or social standing will not suffice to show the potential for a manifest injustice.

     C.     A.R.A. established that the continued existence of the arrest records may cause circumstances which constitute a manifest injustice.

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011).

We conclude that the trial court abused its discretion in denying A.R.A.'s petition for expungement. First, the trial court cited from the bench the facts surrounding A.R.A.'s arrest. As explained above, A.R.A.'s actual guilt or innocence was irrelevant under these circumstances.

8

A.R.A. occupies the status of innocent with respect to the felony arrest. Accordingly, to the extent the trial court gave significant weight to such an irrelevant or improper factor, the court abused its discretion. Beyond this, given the limited discretion Code § 19.2-392.2(F) affords trial courts, we hold that A.R.A. established her entitlement to expungement.

We acknowledge that, so far, A.R.A. has been able to complete her education and find employment in the field of her choice. Those facts simply demonstrate that she has not shown actual adverse effects on her employment up to this point. But the statute is broader. It contemplates expungement when the continued existence or dissemination of the record "may cause circumstances" that constitute a manifest injustice. Code § 19.2-392.2(F).

A.R.A. testified that she has worked in and expects to continue working in a competitive field. At least some of these employers require background checks. She expressed a reasonable fear that she could be denied a job or advancement on the basis of her felony arrest record. She has declined to apply for volunteer positions involving work with children because of this arrest record. She also expressed an interest in attending law school and investigated the requirements for law school admission and for obtaining a law license in Virginia and California. It is possible that law schools and the bar more generally would entirely discount the existence of such an arrest record. The fact remains, however, that an applicant's character and fitness are relevant considerations. The uncontested facts establish a reasonable possibility that a felony arrest record would hinder her career or her educational opportunities, and have hindered the pursuit of her volunteer interests.

We conclude that the trial court abused its discretion in denying A.R.A.'s petition for expungement. Consequently, we reverse the judgment of the trial court.

9

CONCLUSION

We will reverse and remand for entry of an order expunging A.R.A.'s felony arrest record.

*Reversed and remanded.*

CHIEF JUSTICE LEMONS, concurring in the result.

I find myself agreeing with parts of the majority opinion and parts of the dissenting opinion. Whatever dissonance that may cause is tracked to the source of the conflict.

The General Assembly has provided a "Statement of Policy" in Code § 19.2-392.1 that states as follows:

> The General Assembly finds that arrest records can be a hindrance to an innocent citizen's ability to obtain employment, an education and to obtain credit. It further finds that the police and court records of those of its citizens who have been absolutely pardoned for crimes for which they have been unjustly convicted can also be a hindrance. This chapter is intended to protect such persons from the unwarranted damage which may occur as a result of being arrested and convicted.

As if to underscore the strength of this public policy statement, the General Assembly has provided criminal sanctions in Code §19.2-392.3 for unlawful disclosure of expunged records and in Code § 19.2-392.4 against employers, educational institutions and agencies of state and local governments concerning the requirement of answers to questions about certain arrest records or "criminal charges."

The "Statement of Policy" seeks to remediate certain disabilities befalling "an innocent citizen's ability to obtain employment, an education and to obtain credit." Further, it seeks to "protect such persons from the unwarranted damage which may occur as a result of being arrested and convicted."

10

Clearly, the public policy of the Commonwealth is strongly asserted by the General

Assembly and repeated in Code §19.2-392.2(F) where the General Assembly directs that:

> If the court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice to the petitioner, it shall order expungement of the police and court records.

The juxtaposition of "may" and "shall" as governing action verbs in the same sentence,

contributes to the tension.[*] Ordinarily, the directory language of "shall" admits of no discretion.

When the language of direction is joined with the very low level of proof required -- "may cause

. . . manifest injustice to the petitioner," -- the balance is tipped in favor of the petitioner.

I find myself in agreement with the majority's observation that the General Assembly did

not require proof of actual prejudice; rather, it requires a far lower level of proof, namely, a

reasonable possibility of manifest injustice. In that respect, as noted by the majority, the thrust

of the statutory scheme is "forward-looking" rather than "backward-looking." This petitioner is

not required "to prove her actual innocence of a crime the Commonwealth declined to

prosecute." However, embracing that principle does not require exclusion of the facts relating to

the charge which illuminate the context. In this regard, I agree with the dissent that evidence of

the circumstances of the arrest simply cannot be irrelevant to the inquiry.

It is abundantly clear that the manifest injustice anticipated by this Code provision relates

to "ability to obtain employment, an education and to obtain credit." With no other criminal

record and no duty to prove actual prejudice, it is reasonable to conclude that petitioner "may" be

---

[*] In subsection (F) there are five iterations of the term "shall" and three of the term "may."

11

hindered in gaining employment in certain fields she has expressed interest in pursuing, such as admission to law school and the practice of law.

Justice Kelsey opens his dissent by reference to the old adage that "bad facts make bad law." Surely, this observation has stood the test of time and rings true. Unfortunately, in this case the facts are filtered through a statutory scheme that somewhat muddles legislative intent. Nonetheless, I concur in the result reached by the majority because I conclude that, by whatever means and proof employed, the General Assembly intended generous application of this remedial statute, and the trial court abused its discretion by concluding otherwise.

JUSTICE KELSEY, with whom JUSTICE GOODWYN joins, dissenting.

I.

Often dismissed as a mere cliché, "the old adage that 'bad facts' make 'bad law'"[1] sometimes carries more meaning than any legal dissertation ever could. The "bad facts" in this case are bad, so to speak, only because their emotive appeal contorts the legal analysis. In all other respects, the facts start off poorly but end quite well: A young college student, during a regrettable drunken episode, gets arrested for felony assault and battery of a law enforcement officer. The prosecutor later drops the charge down to misdemeanor disorderly conduct. The student subsequently expresses genuine regret, pleads guilty, receives alcohol counseling, graduates with honors, gets a great job, and now looks forward to a bright future. This early chapter of her life no doubt ended with a lesson learned.

---

[1] *Synchronized Constr. Servs., Inc. v. Prav Lodging, LLC*, 288 Va. 356, 370, 764 S.E.2d 61, 68 (2014) (Koontz, S.J., dissenting); *see also Virginian-Pilot Media Cos. v. Dow Jones & Co.*, 280 Va. 464, 477, 698 S.E.2d 900, 907 (2010) (Lemons, J., dissenting); *Shankle v. Spahr*, 121 Va. 598, 610, 93 S.E. 605, 608 (1917).

The legal saga, however, is more complicated. The student, referred to as "A.R.A." by the majority, filed an expungement petition seeking to remove all police and court records related to her felony arrest. The records she sought to expunge would include a police report stating that, while intoxicated, she "grabbed [the officer's] groin" during her arrest, J.A. at 47; an arrest warrant issued by the officer, *see id.* at 5-6; a "Virginia Criminal Record" report identifying the charge, *see id.* at 11; and a court conviction order reflecting a nolle prosequi of the felony charge as part of a plea agreement, *see id.* at 9-10.

The circuit court received evidence showing that A.R.A. has an impressive future ahead of her. She graduated with honors from the College of William & Mary with a 3.8 grade point average. Since her arrest in January 2014, A.R.A. has worked for several prestigious organizations. No evidence suggested that A.R.A. has ever been fired, turned down for a job, held back from an expected promotion, denied any further educational opportunities, or denied credit. To be sure, no employer or potential employer has even intimated that her arrest would in any way limit her employability. Her only basis for believing that something along these lines might one day happen are her factually insupportable fears.

Under Code § 19.2-392.2(F), a circuit court can only grant an expungement petition for a felony arrest if it "finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice . . . . Otherwise, it shall deny the petition." Sitting as factfinder, the circuit court found "that the continued existence and possible dissemination of information relating to the arrest of [A.R.A.] on this charge does not cause and may not cause circumstances which constitute a manifest injustice," and thus, denied the petition with regard to A.R.A.'s felony arrest. J.A. at 16.

13

II.

A.

The majority contends that the circuit court erred because, in its oral statements from the bench, the court "focused on the facts surrounding the arrest." *Ante* at 3. The majority holds that this focus was an abuse of judicial discretion as a matter of law because a circuit court cannot consider the circumstances of an arrest when a petitioner seeks to expunge an arrest record. I find this newly discovered axiom to be as unpersuasive as it is unprecedented.

1.

The majority's reasoning rests on the faulty assumption that Code § 19.2-392.2 is only "forward-looking," not "backward-looking with respect to the facts of the alleged crime." *Ante* at 5-6. Relying heavily on this premise, the majority holds that the facts of the alleged crime must not be considered because they are legally "irrelevant." *Ante* at 8-9. Nothing in the statute, however, expressly or implicitly says as much, and I see no reason why this assumption is or should be true.

Suppose that a man is arrested for a violent act of child sexual abuse. At his preliminary hearing, the accused offers irrefutable evidence of his innocence that promptly results in a nolle prosequi of the charge. If he later petitions the court for expungement, how could any court turn a blind eye to the facts of the alleged crime and treat them as "irrelevant"? *Ante* at 8-9. To the wrongfully accused man, the most important fact is that he had nothing to do with it. How could that be irrelevant?

If I turn the hypothetical around, the point remains the same. Suppose that a violent child abuser, after confessing to the crime, nonetheless is discharged from criminal liability solely because the prosecutor inadvertently scheduled the trial one day beyond the Speedy Trial Act

14

deadline.[2]  Or, suppose he goes to trial but is acquitted because "the constable . . . blundered,"[3] and, as a consequence, irrefutable evidence of guilt was suppressed.  The acquitted pedophile in either hypothetical later seeks an expungement so that he can get a job working with school children.  I think that the public would be surprised to learn that, in deciding whether to expunge his arrest record, a court could take no account whatsoever of the circumstances surrounding his arrest.  It would seem equally perplexing that the court could not consider any evidence tending to support or defeat the validity of the charged offense.

The judicial blinders of this "forward-looking" assumption, *ante* at 5, makes us vulnerable to Jeremy Bentham's trenchant criticism that "jurisprudence may be defined" in aberrant cases as "the art of being methodically ignorant of what everybody knows."  John F. Dillon, *The Laws and Jurisprudence of England and America* (quoting Jeremy Bentham & M. Dumont, A Treatise on Judicial Evidence: Extracted from the Manuscripts of Jeremy Bentham, Esq. 6 n.* (1825) (translating Dumont's original French into English)), *in* 1 Readings on the History and System of the Common Law 241, 241 (Roscoe Pound & Theodore F.T. Plucknett eds., 3d ed. 1927).  That criticism stings here because an expungement order is designed to make sure that no one ever knows the real truth.  Before issuing such an order, therefore, an expungement court should at least find out what exactly it is that the petitioner seeks to hide from the public and factor that into its discretionary decision to grant or deny the petition.

2.

The majority's response to this point serves to underscore it.  Anticipating the logical reach of its "forward-looking" thesis, *ante* at 5, the majority says in a footnote that its "holding is

---

[2] The Speedy Trial Act, Code § 19.2-243, requires that an accused "be forever discharged from prosecution for [an] offense if no trial" takes place within certain time limits.

[3] *People v. Defore*, 150 N.E. 585, 587 (N.Y. 1926) (Cardozo, J.).

limited to the circumstance" in which the prosecutor elected not to "proceed on a charge . . . for which the petitioner was arrested." *Ante* at 6 n.2. Having given this limitation, the majority thereafter "express[es] no opinion as to whether a petitioner similarly 'occupies the status of innocent' for purposes of expungement following a successful suppression motion or speedy trial dismissal." *Ante* at 6 n.2.

While I appreciate the effort to cabin today's holding by disavowing its inevitable logical consequences,[4] I do not understand how the majority's proviso could possibly work. How could a petitioner who has obtained a nolle prosequi of his charge "occup[y] the status of innocent," *ante* at 6 n.2., but not a petitioner who has obtained a dismissal of his charge with prejudice over a prosecutor's objection? Is the former more innocent than the latter?

If so, would it matter that the prosecutor moved to nolle prosequi the charge after the trial court granted a suppression motion rendering otherwise irrefutable evidence of guilt inadmissible at trial? What if the prosecutor moved to nolle prosequi the charge only upon realizing that the speedy-trial deadline had just expired? If the majority's distinction is truly distinct, then it fails to explain why the petitioner who obtains a nolle prosequi of his charge after a successful suppression or speedy-trial motion would "occup[y] the status of innocent," *ante* at 6 n.2, while the petitioner who obtains a dismissal of his charge under the same circumstances would not.

3.

Anchoring its reasoning on a false equivalence, the majority contends that just as "[a] petitioner may not seek to adduce facts at an expungement hearing to prove his innocence . . . .

---

[4] Generally speaking, I do not deny the virtue of this response to some jurisprudential excesses. *See* John T. Loughran, *Some Reflections on the Role of Judicial Precedent*, *in* Appellate Judicial Opinions 30, 30 (Robert A. Leflar ed., 1974) ("Gradual erosion of the authoritative force of a questionable precedent is . . . often accomplished by the courts' refusal to extend the precedent by analogy to situations not within its exact letter.").

the Commonwealth may not introduce facts to establish the petitioner's guilt." *Ante* at 6 (citation omitted).[5] That logic does not follow.

The reason a petitioner cannot challenge a final conviction is that his guilt has been proven beyond a reasonable doubt, and the expungement statute is not a vehicle for collaterally attacking a final conviction. When the Commonwealth seeks to inform the expungement court of the facts surrounding the arrest, including facts that establish the petitioner's guilt, it does so to bolster the legitimacy of the arrest, not to collaterally attack the petitioner's acquittal. "I'm not trying to get into the merits of the case," the circuit court in this case correctly explained, "but she was arrested for a felony." J.A. at 66. It made sense to the circuit court, as it does to me, that the Commonwealth should be allowed to show how and why the petitioner was arrested and to show the probable-cause basis for the arrest. There is no good reason that this information should be considered irrelevant to the question whether any trace of the arrest should be obliterated by an expungement.

The primary decision from which the majority draws the principle that the facts underlying an arrest are irrelevant, *Dressner v. Commonwealth*, 285 Va. 1, 736 S.E.2d 735 (2013), says nothing of the sort. In *Dressner*, the petitioner was arrested for marijuana possession. The general district court amended the charge to reckless driving, to which the petitioner pled guilty. *Id.* at 3-4, 736 S.E.2d at 736. The petitioner later sought, and a circuit court denied, an expungement of the marijuana charge. *Id.* at 4, 736 S.E.2d at 736.

---

[5] The majority cites *Daniel v. Commonwealth*, 268 Va. 523, 531, 604 S.E.2d 444, 448 (2004), in support of this proposition. *See ante* at 6. In *Daniel*, however, we merely held that the petitioner could not "assert his innocence of the original criminal charge" by demanding "an evidentiary hearing . . . to determine whether [he] was actually innocent of" that charge. *Id.* at 530-31, 604 S.E.2d at 448. We did not mention, much less rule on, the question whether a petitioner can introduce facts of the alleged crime in support of his expungement petition or whether the Commonwealth can do the same in opposition to the petition.

17

Because the marijuana charge was "otherwise dismissed," we reversed and held that the presumptively innocent petitioner was eligible to file an expungement petition. *Id.* at 6, 736 S.E.2d at 737. Our narrow holding focused on the question whether the petitioner *could* file an expungement petition — not whether the circuit court had no choice but to grant the expungement petition under an abuse-of-discretion standard. We specifically distinguished the eligibility issue from the "next step" in the analysis, which was whether the petitioner had proved that failing to expunge the records related to her arrest may cause her to suffer a manifest injustice. *Id.* at 7-8, 736 S.E.2d at 738. That issue was uncontested because the circuit court had already found that the petitioner had "demonstrated the existence of manifest injustice through her loss of employment as a result of a background check that revealed the possession of marijuana charge." *Id.* at 8, 736 S.E.2d at 738.

Nothing in *Dressner* mentions the scope of a circuit court's discretion when applying the manifest-injustice standard. That was not the issue on appeal. Nor was it much of an issue in the circuit court. Even so, the majority opinion repeatedly lifts a single phrase from *Dressner* — "the status of innocent," *ante* at 3-5, 6 n.2, 8-9 — in support of its "forward-looking" judicial gloss on the expungement statute, *ante* at 5. That expressive phrase supported *Dressner*'s holding that a petitioner whose charge was "otherwise dismissed" was presumptively innocent for purposes of having the right to file an expungement petition. *See Dressner*, 285 Va. at 6-7, 736 S.E.2d at 737. But the phrase had nothing at all to do with defining the boundaries of discretion governing a circuit court's determination of manifest injustice.

4.

In short, I think it is perfectly reasonable for a court to review the facts underlying an arrest for which a petitioner seeks an expungement when nothing in the statute says otherwise.

After all, a "special circumstance" underlying an arrest "might warrant expungement" to the extent it raises a serious "doubt whether there was any foundation whatsoever for [the petitioner's] arrest and thereby may . . . heighten [the petitioner's] interest in having the record expunged." *Meinken v. Burgess*, 426 S.E.2d 876, 880 (Ga. 1993) (applying a statutory balancing test in deciding whether an expungement petition should be granted). Considering the circumstances of the alleged crime is not, as the majority suggests, an attempt to repudiate a petitioner's success in obtaining a dismissal of the charge. In proffering the facts underlying an arrest, the Commonwealth is not seeking to repudiate an acquittal or anything else. It is the petitioner who seeks to repudiate her arrest by requesting an expungement.

B.

Unimpeded by the majority's "forward-looking" tunnel vision, *ante* at 5, I would view the circuit court's decision and the factual circumstances underlying it through the lens of the governing standard of review. Appellate courts review expungement decisions (sometimes called expunction, sealing, or set-aside orders) under an abuse-of-discretion standard.[6] A foundational aspect of the judicial architecture, the abuse-of-discretion standard "presupposes 'that, for some decisions, conscientious jurists could reach different conclusions based on exactly

---

[6] *See, e.g.*, *Bell v. State*, 217 So. 3d 962, 963 (Ala. Crim. App. 2016); *R.J.Z. v. People*, 104 P.3d 278, 280 (Colo. App. 2004); *Hechinger v. State*, No. 516, 1997, 1998 Del. LEXIS 90, at *4-5 (Del. Feb. 27, 1998) (unpublished); *VFD v. State*, 19 So. 3d 1172, 1174 (Fla. Dist. Ct. App. 2009); *Meinken*, 426 S.E.2d at 879-80; *State v. R.H.B.*, 821 N.W.2d 817, 822 (Minn. 2012); *State v. Cavaricci*, 834 P.2d 406, 408 (Nev. 1992); *Howrey v. State*, 46 P.3d 1282, 1284 (Okla. Crim. App. 2002), *superseded by statute on other grounds*, 2012 Okla. Sess. Laws 183, § 2 (codified as amended at Okla. Stat. tit. 22, § 18(5) (2012)); *Commonwealth v. Wallace*, 97 A.3d 310, 317 (Pa. 2014); *Ex parte Vega*, 510 S.W.3d 544, 548 (Tex. App. 2016); *Horgan v. Sandy City*, 283 P.3d 1079, 1080 (Utah Ct. App. 2012); George L. Blum, Annotation, *Judicial Expunction of Criminal Record of Convicted Adult Under Statute*, 69 A.L.R.6th 1, § 2 (2017) ("A trial court's ruling on a petition for expunction is reviewed under an abuse-of-discretion standard.").

the same facts — yet still remain entirely reasonable.'" *Du v. Commonwealth*, 292 Va. 555, 564, 790 S.E.2d 493, 499 (2016) (citation omitted). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Id.* (citation omitted).

The expungement statute states that the circuit court "shall deny the petition" unless the court finds that not expunging the records "may cause circumstances which constitute a manifest injustice." Code § 19.2-392.2(F). The operative language creates a probabilistic equation using the first two variables of Judge Learned Hand's formula: the probability of the harm multiplied by "the gravity of the resulting" harm. *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947). In most cases, including this one, there is no demonstrably right or wrong answer. Instead, it is simply a judgment call.[7]

I accept that the word "may" in Code § 19.2-392.2(F) suggests an uncertain prediction. Something that may happen also *may not* happen. When the forecast is in equipoise — with as much chance of the thing happening as not — a "may" probability still exists. One could even say that a 1-in-100 probability also means that the thing predicted "may" happen, albeit at a weak, but still measurable, level of certitude. The only thing we know for certain is that anything less than a 100% probability — the level at which the thing "shall" surely happen — can be included, at least as a strictly linguistic matter, in a "may" forecast.

---

[7] I do not believe the majority's conclusion is strengthened by the statutory juxtaposition of "may" and "shall," *ante* at 11, with the latter tipping the scales in favor of granting expungements. There are two relevant "shalls" in Code § 19.2-392.2(F). Both add equal weight to either side of the "may" fulcrum. If the circuit court makes the "may" discretionary finding, the court "shall" order expungement. Code § 19.2-392.2(F). But the opposite is equally true: "*Otherwise*, it *shall* deny the petition." *Id.* (emphasis added). Thus the "shall" weight rests on both sides of the "may" seesaw. It does not favor either side. Instead, the command aspect of the statute depends entirely on a discretionary "may" judgment call.

It is unclear where in the 1% to 99% range of confidence the majority pegs its conclusion that A.R.A. "established her entitlement" to an expungement issued in the first instance by an appellate court. *Ante* at 9. I offer no criticism for that lack of clarity, however, because I too find it quite impossible to give the word "may" a precise meaning. But whatever threshold of probability the word was meant to have in this context, I do not believe that the legislature intended to drop the "may" probability into the realm of wholly speculative, insubstantial possibilities.

The phrase "manifest injustice" is often used synonymously with the phrase "miscarriage of justice." *See, e.g.*, *Harris v. DiMattina*, 250 Va. 306, 318, 462 S.E.2d 338, 343 (1995) (stating that "the application of a new law" must not "constitute a miscarriage of justice" or "manifest injustice"). A similar standard governs procedural defaults. Under Rules 5:25 and 5A:18, if an appellant fails to preserve an argument in the trial court that he wishes to make on appeal, he generally forfeits the argument unless the "ends of justice" compel the appellate court to ignore the waiver. So, too, when a criminal defendant seeks to withdraw a guilty plea after judgment, a trial court may grant the request only "to correct manifest injustice." Code § 19.2-296.

In this context, "[t]he term 'manifest' is defined as being 'synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evident, and self-evident. In evidence, *that which is clear and requires no proof*; that which is notorious.'" *Velazquez v. Commonwealth*, 292 Va. 603, 616, 791 S.E.2d 556, 562 (2016) (emphasis in original) (citation omitted).[8] In

---

[8] We have found manifest injustice under Rule 5:25 "in very limited circumstances" under the ends-of-justice exception. *Williams v. Commonwealth*, 294 Va. 25, 28, ___ S.E.2d ___, ___ (2017) (citation omitted). The appellant must show that the "exception is necessary to avoid a *grave injustice or the denial of essential rights*." *Brown v. Commonwealth*, 279 Va. 210, 220, 688 S.E.2d 185, 190 (2010) (emphasis added) (citation omitted); *see also Williams*, 294 Va. at 28-29, ___ S.E.2d at ___. Under Rule 5A:18, the Court of Appeals uses the same standards in

other words, a "manifest injustice amounts to an obvious miscarriage of justice," *id.* (citation omitted), and denotes a grave, intolerable wrong of such severity that the judicial conscience simply cannot bear to leave it unaddressed.

C.

Applying the statutory formula to the facts of this case — with "may" requiring something greater than a speculative, insubstantial possibility and "manifest injustice" requiring a grave, intolerable wrong — I cannot conclude that the circuit court abused its discretion in denying A.R.A.'s requested expungement of her felony arrest.

My disagreement turns on the majority's view that the expungement statute "restrict[s]" the circuit court's discretion by employing a "forgiving standard." *Ante* at 6. That is only half right. There is nothing forgiving about the manifest-injustice standard, as no doubt a multitude of criminal defendants who have experienced the unforgiving nature of procedural default principles would attest. *See, e.g.*, *Williams v. Commonwealth*, 294 Va. 25, 28-29, ___ S.E.2d ___, ___ (2017) (rejecting an ends-of-justice argument under Rule 5:25 because there was no showing of a "manifest injustice"). What the majority really means to say is that the "may" prediction is forgiving. I grant that interpretation. But even if I assumed in A.R.A.'s case that every one of her fears might one day come true, none of them *compels* (as opposed to merely *permits*) a reasonable jurist exercising sound discretion to find that they constitute a manifest injustice.

A.R.A. said that she has "contemplated" the possibility of attending law school and that the applications for bar admission typically require a statement of past criminal charges and

---

deciding whether to apply the ends-of-justice exception. *See Commonwealth v. Bass*, 292 Va. 19, 27, 786 S.E.2d 165, 169 (2016).

convictions.  *Ante* at 2; *see* J.A. at 31, 39.  Perhaps so.  But A.R.A. has presented no evidence to show that her un-expunged records on a subsequently dismissed charge would prohibit her admission either to law school or to any state bar.  The majority appears willing to silently take judicial notice that both scenarios could occur and that either would be a manifest injustice.  I would not take judicial notice of either scenario[9] — but if I were to do so, the judicially-noticed source of common knowledge would have to explain why I have never heard of an individual denied admission either to law school or to the bar based solely on the presence of an arrest record for a subsequently dismissed charge.

A.R.A. suggested a similar faux-manifest-injustice scenario in her testimony that the start date at her Disney ABC job was "delayed" because of a "disclosure of her criminal history." *Ante* at 2.  After receiving her application, Disney ABC responded:  "Congratulations! . . . [T]his letter confirms our offer of employment . . . .  Congratulations and welcome to the team!"  J.A. at 70.  A routine background check for this job took longer than anticipated, so A.R.A.'s start date was delayed "for about a week to 10 days."  *Id.* at 34.  Despite A.R.A.'s testimony, no other evidence suggested that the delay was caused by the records related to A.R.A.'s arrest rather than her conviction.  If one could draw any inference from these facts, it should be the opposite conclusion because the Disney ABC application never asked whether A.R.A. had ever been arrested.  It only asked if she had been convicted.  *See id.* at 48.  The application itself thus implied that Disney ABC was unconcerned about mere arrests.

---

[9] "A court may take judicial notice of a factual matter not subject to reasonable dispute in that it is either (1) common knowledge or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Va. R. Evid. 2:201(a).  "A party is entitled upon timely motion," moreover, "to an opportunity to be heard as to the propriety of taking judicial notice."  Va. R. Evid. 2:201(c).

The majority assumes that Disney ABC delayed A.R.A.'s start date to investigate the records related to her arrest rather than to her conviction. But no evidence substantiates this assumption, as Disney ABC referred only to the "pending . . . status of [A.R.A.'s] background check" because A.R.A. "disclosed something." *Id.* at 72. Even if there were any evidence of the cause of the delay, I do not see how a short delay in a start date constitutes a manifest injustice. All the more, I do not understand how an appellate court could declare that a circuit court abused its discretion in failing to hold that a delayed start date constitutes a manifest injustice.

### III.

In sum, the circuit court did not abuse its discretion by denying A.R.A.'s expungement petition for her felony arrest. A reasonable jurist could, and in this case did, find that A.R.A. failed to establish that "the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice." Code § 19.2-392.2(F). A.R.A.'s predictions of future harm were too speculative, the magnitude of the harm too underwhelming, and the circumstances of her arrest too unsympathetic to warrant the de novo appellate relief that the majority gives her.

I respectfully dissent.