# IN THE COURT OF APPEALS OF IOWA

No. 19-1327
Filed August 5, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JANE DOE,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Warren County, Terry Rickers, Judge.

A citizen appeals from the denial of her motion to expunge a 2011 criminal case. **REVERSED AND REMANDED.**

Adrienne Loutsch of Iowa Legal Aid, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Doyle and Schumacher, JJ.

**SCHUMACHER, Judge.**

This appeal arises from a district court order denying a motion to expunge a criminal case dating from 2011. The charges originally present in the case were consolidated into a different case number in which the appellant pleaded guilty to several but not all of the counts charged. On appeal, we consider whether the language of Iowa's expungement statute, codified at Iowa Code chapter 901C (2019), treats a transfer of charges from one case to another as a dismissal of the charges from the transferor case for purposes of a motion to expunge the transferor case. We conclude a complete "transfer" or "merger" of charges from one case number into another results in the charges in the transferor case being "otherwise dismissed" within the meaning of Iowa Code section 901C.2(1)(a)(1).

**Background Facts and Proceedings**

On September 28 and 29, 2010, two fraudulent checks were passed at a gas station in Indianola, Iowa. Officer Brian Sher of the Indianola Police Department met with the gas station company's investigator. Using video surveillance and a driver's license photo, Officer Sher identified the person passing the checks as the defendant here, Jane Doe.[1] Officer Sher requested and received a warrant for Doe's arrest. Doe was charged with two counts of forgery, which were given the case number that is the focus of this appeal. We refer to this case as case A. The defendant accumulated additional forgery charges around the same time, for a total of seven charges. In a second case number, which we refer to as case B, a single additional count of forgery was charged for an offense

---

[1] We use a pseudonym to refer to the defendant due to the nature of this case, and for similar reasons, we refrain from specifying the case numbers.

allegedly committed on September 25, 2010.  A third case number, which we refer to as case C or the "omnibus case," held an additional four counts of forgery.  Case A, which holds two counts of forgery, was initiated on October 19, 2010.  Case B was initiated on October 20, 2010.  Case C was initiated on October 25, 2010.

On July 20, 2011, the State filed a motion in case C with the caption "Application to Merge."  The motioned requested that the court "merge" cases A and B into case C.  In support of the motion, the State asserted that cases A and B "originated from a common scheme" and that "[j]udicial economy warrants the merger" of the first two cases into the third.  The motion tracked the language of Iowa Rule of Criminal Procedure 2.6(1), which provides that,

> Two or more indictable public offenses which arise from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan, when alleged and prosecuted contemporaneously, shall be alleged and prosecuted as separate counts in a single complaint, information or indictment, unless, for good cause shown, the trial court in its discretion determines otherwise.

The court granted the motion the next day, saying that cases A and B "are merged into" case C.  Case C then became the omnibus case in which a global disposition was reached.  The court's order for merger was filed in case A.

On September 6, 2011, the State filed a trial information in case C charging only six, not seven, counts of forgery.  The 2010 dates of these offenses were: Count I, September 25; Count II, September 25; Count III, September 28; Count IV, September 28; Count V, September 29; and Count VI, September 29.

On October 10, 2011, Doe pleaded guilty to counts I, II, and III in case C. Counts IV, V, and VI were dismissed.

In 2015, the Iowa Legislature enacted new legislation, codified at Iowa Code chapter 901C, that allows a defendant to apply for expungement of charges in certain circumstances. 2015 Iowa Acts ch. 83, § 1; *see also* 2016 Acts ch. 1073, §§ 183–84, 188 (making clarifying amendments). Seeking to take advantage of chapter 901C, Doe filed a motion, dated June 8, 2019, to expunge case A. Doe's motion was based on a form created by Iowa Legal Aid. One of the statements in the form motion was "My charges were dismissed, or I was acquitted, on 7/21/2011." Doe supplied the date in her own hand.

On July 10, 2019, the district court issued an order denying Doe's motion seeking expungement of case A. The court said,

> This case was never dismissed. Instead, it was merged into [case C].
> Code section 901C.2(1)(a)(1) states that expungement is permissible only if "[t]he criminal case contains one or more criminal charges in which an acquittal was entered for all criminal charges, or in which all criminal charges were otherwise dismissed."
> Neither an acquittal nor a dismissal was ever entered in this case. Although a charge or charges from this case may have been ultimately dismissed in [case C], expungement of those charges is not permitted because not all charges in that case were ultimately dismissed. Consequently, the motion is hereby denied.

(First alteration in original). Doe timely appealed from the denial of her motion to expunge case A.

**Standard of Review**

"We review issues of statutory interpretation for correction of errors at law." *State v. Doe*, 903 N.W.2d 347, 350 (Iowa 2017) (*Doe I*) (quoting *Rhoades v. State*, 848 N.W.2d 22, 26 (Iowa 2014)).

**Discussion**

The narrow issue presented on appeal is whether a district court's order "merging" charges from one case into another case results in the charges in the transferor case being "otherwise dismissed" within the meaning of Iowa Code section 901C.2(1)(a)(1). The relevant provisions of section 901C.2(1)(a)(1) provide:

> Except as provided in paragraph "b", upon application of a defendant or prosecutor in a criminal case, or upon the court's own motion in a criminal case, the court shall enter an order expunging the record of such criminal case if the court finds that the defendant has established that all of the following have occurred, as applicable:
> (1) The criminal case contains one or more criminal charges in which an acquittal was entered for all criminal charges, or in which all criminal charges were otherwise dismissed.

Since the enactment of Iowa Code section 901C.2(1), the Iowa Supreme Court has been called upon to interpret such on three separate occasions. *State v. Doe*, 943 N.W.2d 608 (Iowa 2020) (*Doe III*); *State v. Doe*, 927 N.W.2d 656 (Iowa 2019) (*Doe II*); *Doe I*, 903 N.W.2d 347. Doe argues that, in light of the Iowa Supreme Court's 2017 decision, which held that expungement inquiries must be conducted on a case-number-by-case-number basis, the State's abandonment of the charges in case A results in those charges being "otherwise dismissed" within the meaning of section 901C.2(1)(a)(1). *See Doe I*, 903 N.W.2d at 354–55. The State not only disagrees that the court's treatment of the charges in the instant case should be considered dismissal, it asserts that Doe never even received charges in this case, since only a criminal complaint was filed prior to the "merger," not a trial information.

We reject the State's argument that because no trial information was filed prior to the transfer of the charges to case C Doe was never "charged" in the instant case. Section 901C.2 forms part of Title XVI of the Iowa Code, definitions for which are codified at section 801.4. Section 801.4(3) defines the word "charge" for purposes of Title XVI: "'Charge' means a written statement presented to a court accusing a person of the commission of a public offense, including but not limited to a *complaint*, information, or indictment." (Emphasis added). We conclude that based on this definition a criminal complaint suffices to bring "charges" against a defendant for purposes of section 901C.2. The complaints filed by Indianola Police Officer Sher alleging Doe committed forgery in violation of Iowa Code section 715A.2 (2009) suffice to have brought "charges" against Doe within the meaning of that word as used in section 901C.2 (2019).

We next turn to consider the practical effect of the district court's July 21, 2011 order "merging" three cases under the number of the omnibus case. Following the order, the State never moved to dismiss or further prosecuted the instant case. The case was essentially closed by the court's order "merging" the cases. Doe motioned for expungement, filing her motion just weeks shy of nine years after the court's "merging" order. Cases A, B, and C remain searchable under Doe's true name on the Iowa's public court records database, available at the web address *iowacourts.state.ia.us*. The "Disposition Status" of cases A and B are listed as "TRANSFERRED." In case A, the two charges for forgery, a class "D" felony, have the "adjudication" designation of "not filed."

Thus, although the State's "Application to Merge" motion and the court's order granting that motion both used the term "merger," the use of the term

"merger" does not precisely reflect the reality of the court order's effect. The consequence of the order was an amendment of case C's trial information adding several counts of forgery and the application of the designation "transferred" to cases A and B. The charges in cases A and B are still visible under their original case numbers with an "adjudication" status of "not filed," and the case numbers are still searchable.

We now consider the question of statutory interpretation presented on appeal, one of first impression. Does the transfer of charges from one case to another—an action which may alternatively be called an amendment, modification, or merger—result in those charges being "otherwise dismissed" from the transferor case for purposes of section 901C.2? We hold that such a transfer results in the charges in the transferor case being "otherwise dismissed" for purposes of section 901C.2.

At the outset, we recognize that section 901C.2 "has the patina of prior judicial interpretation." *Doe III*, 943 N.W.2d at 612. In *Doe I*, 903 N.W.2d at 351, the Iowa Supreme Court considered the very subparagraph disputed in this appeal, section 901C.2(1)(a)(1). Calling the provision, "not a model of precise drafting," the court summed it up thusly: "[section 901C.2(1)(a)(1)] says that the record of a case shall be expunged only if 'an acquittal was entered for all criminal charges, or . . . all criminal charges were otherwise dismissed.'" *Doe I*, 903 N.W.2d at 351 (ellipsis in original) (quoting Iowa Code § 901C.2(1)(a)(1)).

The first question in interpreting a statute is whether the provision contains an ambiguity. *Id.* "A statute is ambiguous 'if reasonable minds can disagree on the meaning of particular words or the statute as a whole.'" *State v. Nall*, 894

N.W.2d 514, 518 (Iowa 2017) (quoting *State v. McIver*, 858 N.W.2d 699, 703 (Iowa 2015)).  "Ambiguity may arise not only from words themselves but 'from the general scope and meaning of a statute when all its provisions are examined.'"  *Young v. Iowa City Cmty. Sch. Dist.*, 934 N.W.2d 595, 604 (Iowa 2019) (quoting *Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996)).  "If a statute is ambiguous we may look to the legislative history, the object to be accomplished, the evils to be remedied, and the purpose for which the statute was enacted."  *In re G.J.A.*, 547 N.W.2d 3, 6 (Iowa 1996); *see* Iowa Code § 4.6.  We conclude the phrase "all criminal charges were otherwise dismissed" may reasonably be construed to mean that the latter part of section 901C.2(1)(a)(1) is met either by only strict dismissal or by the situation presented here, where a case's criminal charges are transferred to a different case and the transferor case is abandoned.

> In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes.  *See* Iowa Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . ."); *Doe [I]*, 903 N.W.2d at 351 (stating we consider the "relevant language, read in the context of the entire statute").  If the "text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction."  *In re Estate of Voss*, 553 N.W.2d 878, 880 (Iowa 1996); *see State v. Richardson*, 890 N.W.2d 609, 616 (Iowa 2017) ("If the language is unambiguous, our inquiry stops there.").  If the language of the statute is ambiguous or vague, we "may resort to other tools of statutory interpretation." *Doe [I]*, 903 N.W.2d at 351.

*Doe III*, 943 N.W.2d at 610.

"We seek to advance, rather than defeat, the purpose of the statute." *Rhoades v. State*, 880 N.W.2d 431, 447 (Iowa 2016).  The Iowa Supreme Court has discussed the purpose of chapter 901C at length:

> [A] driving concern behind chapter 901C was that a member of the general public—such as an employer doing an informal background check—could access our computerized docket and potentially draw inappropriate inferences from the mere presence of a criminal file relating to an individual, even though the criminal charges were dismissed or the individual was acquitted. This same member of the general public, though, would not likely be familiar with the ins and outs of the Iowa Rules of Criminal Procedure. Thus, if two separate case files show up in a records search, such as AGIN****** and SMSM******, this hypothetical member of the public might well conclude that the dismissed domestic abuse assault charge in SMSM****** related to a *different* incident, not the same incident as to which the defendant entered a guilty plea in AGIN******.
>
> In other words, instead of being necessary to give the public the full picture of an alleged criminal incident that resulted in a conviction, disclosure of a separate numbered legal proceeding involving a simple misdemeanor could instead give the public the misimpression that the defendant was involved in *another* alleged criminal incident—a misimpression we presume the legislature wanted to avoid. If the public is likely to assume the existence of an additional alleged criminal incident whenever the public records show an additional criminal proceeding, then Doe's interpretation of the statute does a better job of avoiding undue stigma.

*Doe I*, 903 N.W.2d at 354. In this statement, the court discerned the legislature's concern that members of the general public may have "misimpression[s]" or "draw inappropriate inferences" from "separate numbered legal proceeding[s]," where one or more of those separately numbered proceedings saw the criminal charges dismissed or the individual acquitted. *See id.*

Additionally, the *Doe I* court noted that the expungement legislation now codified at chapter 901C originally contained language pertaining to related cases that might be relevant here and which required that:

> "(1) the defendant has not been charged with a crime in a related case"; and "(2) if the defendant was charged with a crime in one or more related cases, no charges are pending in a related case, the defendant has not been convicted of a crime in a related case, and the dismissal of the case was not part of a plea bargain." S.F. 385, 86th G.A., 1st Sess. (Iowa 2015) (introduced).

*Id.* at 352. However, the court found informative that this language was ultimately removed by legislative amendment. *Id.* at 352–53 (citing House Amendment 1176 to S.F. 385, 86th G.A., 1st Sess. (Iowa 2015)).

The question before the *Doe I* court was whether the term "case" in section 901C.2(1)(a)(1) referred to either a numbered legal proceeding or to "all the charges arising out of a single transaction or set of circumstances." *Id.* at 351. The court determined the former interpretation was correct. *Id.* at 354–55. In so holding, the court cautioned that any interpretation "must apply across the board" and noted that the "one case per case number" interpretation it adopted "does a better job of avoiding undue stigma." *Id.* at 353–54. The court contrasted its decision with states that adopt a "factual-relatedness" test and found it was not unfair to deprive the public of information regarding a dismissed case factually related to the charge on which the defendant was ultimately convicted. *Id.* at 354.

Following the decision of *Doe I*, our interpretation of the portion of the statute here at issue is guided by the supreme court's explanation that expungement inquiries are conducted on a case-number-by-case-number basis. We review a district court's order denying expungement by considering only the case number in which the motion was filed. However, the *Doe I* decision did not evaluate the phrase "otherwise dismissed," nor has the legislature defined it. Therefore, with respect to a determination of the phrase's meaning, we "refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage" to aid in our inquiry. *See Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 516 (Iowa 2012) (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 571 (Iowa 2002)).

In surveying other states' expungement statutes, we have found only the language of Virginia's statute to be similar to Iowa's. *See* Va. Code § 19.2-392.2(a)(1), (2) (2020). Under the Virginia Code, a person may file a petition requesting expungement if he or she was acquitted, a *nolle prosequi* was taken, "or the charge is otherwise dismissed." *Id.*

The Supreme Court of Virginia considered the phrase "otherwise dismissed" in *Dressner v. Commonwealth*, 736 S.E.2d 735, 736–38 (Va. 2013); *see also A.R.A. v. Commonwealth*, 809 S.E.2d 660, 662–63 (Va. 2018). In *Dressner*, the court took up the question of whether an amendment of a charge to a "separate and unrelated charge" amounted to the former charge being "otherwise dismissed" for the purposes of Virginia's expungement statute. 736 S.E.2d at 736–37. The court answered the question in the affirmative, holding "that when a criminal charge is amended to a separate and unrelated charge, and the elements of the amended charge are not subsumed within the original charge, the petitioner occupies 'the status of innocent' with respect to the original charge." *A.R.A.*, 809 S.E.2d at 662 (explaining the holding of *Dressner*). The court's interpretation of "otherwise dismissed" was broad enough to encompass a situation in which a charge was functionally, although not explicitly, dismissed.

Interpreting the phrase "otherwise dismissed" to include functional dismissals is in accord with the broad definition of the word "otherwise." *Otherwise*, Black's Law Dictionary (11th ed. 2019) ("The term *otherwise* tends to be quite broad in scope."). Included among the word's definitions are: "1. In a different way; in another manner"; "2. By other causes or means"; and "3. In other conditions or circumstances." *Id.* The term should be interpreted according to its ordinary

meaning. *See State v. Davis*, 922 N.W.2d 326, 330 (Iowa 2019) ("We give words their ordinary meaning absent legislative definition."). We think the modification of "dismissed" by "otherwise" allows for cases such as the instant appeal in which a case number becomes functionally dismissed.

Our conclusion is buttressed by an examination of other states' expungement statutes. Several states use more specific language than that found in section 901C.2(1)(a)(1). *See* Tex. Code Crim. Proc. Ann. art. 55.01(a)(2)(A)(ii) (West 2019) ("dismissed or quashed"); *see also* Ala. Code § 15-27-1(a)(1), (4) (2019) (allowing expungement where "the charge is dismissed with prejudice" or "dismissed without prejudice . . . has not been refiled, and the person has not been convicted of any other . . . crime" within a given time period).

Similarly, a few states give thorough lists of the instances in which expungement may be granted. *See* Fla. Stat. § 943.0585(1)(b) (2019) ("An indictment, information, or other charging document was filed or issued in the case giving rise to the criminal history record, was dismissed or *nolle prosequi* by the state attorney or statewide prosecutor, or was dismissed by a court of competent jurisdiction or a judgment of acquittal was rendered by a judge, or a verdict of not guilty was rendered by a judge or jury."); Mo. Rev. Stat. § 610.105 ("1. If the person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty or imposition of sentence is suspended in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records when such case is finally terminated except as provided in subsection 2 of this section and section 610.120 and except that the

court's judgment or order or the final action taken by the prosecutor in such matters may be accessed.").

Three states specify that a defendant may expunge a case where no disposition has been reached. Miss. Code Ann. § 99-15-57(2) (West 2019) ("Upon petition therefor, the court shall expunge the record of any case in which an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped, *there was no disposition of such case*, or the person was found not guilty at trial." (emphasis added)); N.H. Rev. Stat. Ann. § 651:5(II-a)(a) (2018) ("For an offense disposed of on or after January 1, 2019, any person whose arrest has resulted in a finding of not guilty on all charges that resulted from the arrest, or whose case was dismissed or *not prosecuted*, shall have the arrest record and court record annulled[.]" (emphasis added)); 18 Pa. Stat. and Cons. Stat. Ann. § 9122(a) (West 2019) ("Criminal history record information shall be expunged in a specific criminal proceeding when: (1) no disposition has been received or, upon request for criminal history record information, no disposition has been recorded in the repository within 18 months after the date of arrest and the court of proper jurisdiction certifies to the director of the repository that no disposition is available and no action is pending. Expungement shall not occur until the certification from the court is received and the director of the repository authorizes such expungement[.]). The statutes of these three states lend support to the notion that by using broad language in section 901C.2 the Iowa Legislature could have contemplated that cases such as the one here on appeal would satisfy the section's broad language. In case A, the "disposition" of the case is listed as "transferred."

We find further support for the appellant's urged interpretation by examining the practical results of the two interpretations. Although we are to observe "a strict rule of 'one case per case number'" when reviewing expungement cases, *Doe I*, 903 N.W.2d at 353, we may consider "[t]he consequences of a particular construction" when interpreting an ambiguous statute. Iowa Code § 4.6(5).

In considering the consequences of adopting either the appellant's or the State's proposed interpretations, we note that the "merger" of three cases under one case number left behind three publicly searchable case numbers, two of which were defunct. These three case numbers exist despite the court's granting of a motion to "merge" based on a determination that the cases originated from "a common scheme or plan." *See* Iowa R. Crim. P. 2.6(1).

It is unclear what precisely happened to Doe's charges from case A. Case C had four charges prior to the "merger," and after the "merger" Doe pleaded guilty to counts I–III of case C. There is discord between the calendar dates of the counts listed on the trial information and the counts as reflected in the public database. Furthermore, the trial information only charged six counts, even though the "merger" applied to seven total counts. Thus, presuming at least one of the charges from case A made it onto the trial information in case C, we cannot discern whether that case was one to which Doe pleaded guilty, and neither can the parties tell us this information.

Because the State may not always seek to consolidate, the State's proposed interpretation could lead to uneven availability of expungement for defendants since defendants who have charges in one case dismissed as a result of a plea bargain in another case can take advantage of expungement where a

similarly situated defendant could not if a motion to "merge" or "consolidate" had been granted in his or her cases. Although in its routing statement the State asserts "the resolution of [this] case is unlikely to affect a wide swath of defendants," we do not think consolidations such as the one here are so rare as to mitigate the concerns surrounding the State's interpretation.

Additionally, were we to adopt the State's position, even defendants who were never convicted of any crime in the transferee case would be unable to expunge a transferor case where the transferred charges were dismissed upon reaching the transferee case. If we were to hold that the instant case cannot be expunged because the charges, by virtue of their "transfer," were not dismissed, then a defendant who achieved dismissal of all claims would be able to expunge the transferee case in its entirety but *not* the transferor case, because the charges in the transferor case were not dismissed. This would result in a case being visible to the public even if all charges were dismissed and expunged in a separate file.

No clear public policy militates in favor of the State's position. The State's interest in retaining public access to case A is at a low ebb considering that the case's former charges are publicly viewable in case C. By allowing for the expungement of the now-empty case A, we further the purpose behind chapter 901C of limiting the ability of the public to draw inappropriate inferences from disclosure of multiple separate numbered legal proceedings. *See Doe I*, 903 N.W.2d at 324.

**Conclusion**

"Generally, we try to interpret statutes so they are reasonable and workable." *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 473 (Iowa 2017). In the Iowa

Supreme Court's 2017 decision interpreting section 901C.2(1)(a)(1), the court adopted "[a] strict rule of 'one case per case number'" that it said could "be applied predictably, quickly, and in a ministerial way." *Doe I*, 903 N.W.2d at 353. Today, we hold that the phrase "otherwise dismissed" in section 901C.2(1)(a)(1) encompasses the situation in which a case number becomes inactive because all charges have been "transferred" to another case number. This interpretation maintains ministerial efficiency and "does a better job of avoiding undue stigma" than its alternative. *See id.* at 354. We remand with instructions to grant Doe's motion for expungement.

**REVERSED AND REMANDED.**