UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia

ERIC DEMETRIUS CAMPBELL

MEMORANDUM OPINION[*] BY
v.      Record No. 0791-22-4          JUDGE FRANK K. FRIEDMAN
                                        APRIL 25, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Tracy C. Hudson, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Jason D. Reed, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

This appeal requires us to determine what special conditions of probation may be

imposed upon a probationer who has never been convicted of a sexual offense. Eric Demetrius

Campbell challenges the trial court's ruling permitting his probation officer to impose sex

offender special conditions of probation on him despite the fact that he has never been convicted

of a sexual offense. He also argues that the trial court erred in concluding that sex offender

probation conditions were reasonable under the circumstances. For the following reasons, and

under the unique circumstances of this case, we reverse the trial court's judgment and remand the

matter for further proceedings.

---

[*] This opinion is not designated for publication. See Code § 17.1-413.

BACKGROUND[1]

Upon his guilty plea under *North Carolina v. Alford*, 400 U.S. 25 (1970), the trial court convicted Campbell for two counts of assault and battery upon a family member as a third or subsequent offense within 20 years. The trial court sentenced Campbell to a total of 10 years' imprisonment with 7 years and 11 months suspended and 4 years of probation. The sentencing order required him to comply with "all the rules and requirements set by [his] [p]robation [o]fficer" and with all terms of his probation contract.

On March 24, 2020, after his release from incarceration, Campbell signed an agreement with the probation and parole office to "the standard eleven conditions of [probation] supervision." Condition 6 required Campbell to "follow the [p]robation and [p]arole [o]fficer's instructions" and "be truthful, cooperative and report as instructed." On April 7, 2020, the probation officer presented Campbell with a separate document entitled "Sex Offender Special Instructions." The document is a Department of Corrections (DOC) pre-printed form that lists 30 enumerated conditions; the first 24 of which include boxes, every one of which was marked in the document proffered to Campbell for his signature. Instructions 4, 6, 8-12, 14-16, and 24 also had a handwritten star next to them. Campbell declined to sign or agree to the conditions.

Campbell, by counsel, subsequently moved the trial court to remove what he characterized as unreasonable probation conditions, namely the sex offender probation conditions imposed by his probation officer. Campbell stated that, when he reported to probation as instructed, he was presented with a list of additional conditions that are "generally imposed on sex offenders by order

---

[1] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [Campbell]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

of the court." Campbell maintained that he had "never been convicted of any sex offense at all," so the additional conditions were unreasonable as applied to him.

In a letter dated March 15, 2021, to the trial court, Senior Probation and Parole Officer Rachel Taylor reported that Campbell was being supervised as a sex offender under DOC Operating Procedure 735.3, which she stated governs "Supervision of Sex Offenders in Community Corrections." The DOC procedure "provides for intensive supervision of the most serious, high-risk sex offenders," whom DOC defines as probationers who are "required to register as a sex offender," have "a sex offense in their criminal history," or have been "convicted of an offense of a sexual nature." The letter stated that the original rape charge lodged against Campbell, though eventually amended to domestic assault and battery as a third offense, was "an essential component underlying the Instant Offense[.]" Taylor stated that, upon referral for a psychosexual evaluation, Campbell was determined to be "[a]bove [a]verage [r]isk for sexual offending." Taylor reported that Campbell was referred to the Sex Offender Awareness Program, which he had attended regularly. In addition, Campbell had successfully completed an anger management program. Taylor recommended that Campbell be required to "comply with all standards of Sex Offender Probation Supervision to include Sex Offender Treatment and routine polygraph testing."

At an April 2, 2021 hearing on Campbell's motion to remove the probation conditions, he argued that the trial court had not delegated to the probation and parole office the authority to impose sexual offender special conditions. Specifically, Campbell contended that he had not been convicted for any sexual offense and that he would not accept responsibility for any sex offense, which would be part of sex offender treatment required under the proposed conditions. Campbell asserted that the sex offender special conditions were "totally inappropriate" considering the manner in which the case "ultimately [was] resolved." He noted that, while the trial court had "imposed

special conditions in this case," the Commonwealth had not requested sex offender conditions and the court had not ordered them.

The Commonwealth argued that the probation officer's authority to impose sex offender special conditions was derived from "their statutory supervising authority"[2] and the trial court's "inherent authority" to delegate "certain aspects of probation." In the Commonwealth's view, the "statutory supervising authority" and the delegated authority from the trial court permitted the probation officer to "look at the nature and circumstances of what was alleged, any sort of proffer that was made in the [pre-sentence investigation report], any allegations made by a complaining witness, and any information that's derived from the accused during the course of their supervision" and impose sex offender conditions. Moreover, under Code § 19.2-304 the trial court had the authority to revoke or modify the probation conditions upon proper hearing and notice. The Commonwealth asserted that, in its proffer of evidence at the hearing upon Campbell's *Alford* guilty plea, it had advised the trial court that Campbell sexually assaulted the complaining witness during the incident.[3]

The trial court acknowledged that the initial charges against Campbell included a rape charge. The trial court concluded that, through Condition 6 of the probation contract, it delegated to the probation and parole office the authority to impose sex offender conditions if the conditions were reasonable. The trial court postponed any decision about whether imposing sex offender conditions was reasonable under the circumstances.

Campbell also asked the trial court to expunge his criminal record of "everything except for the things for which he was convicted." Thus, the record of conviction would be only for the two

---

[2] Code § 53.1-145 delineates the powers and duties of probation and parole officers.

[3] The record on appeal does not contain a transcript of the plea hearing, including the Commonwealth's proffer of the evidence it would have presented had the matter gone to trial.

domestic assault and battery, third or subsequent offense, convictions. The trial court granted Campbell's petition to expunge his record of any reference to the charges that were amended or nolle prossed because "he should [not] be saddled with" such charges on his record. Subsequently, the record in the case, other than the Commonwealth's version of events in the pre-sentence investigation report,[4] was redacted to remove references to the unadjudicated charges.

At the hearing to determine the reasonableness of the sex offender probation conditions, the Commonwealth introduced evidence that on April 7, 2020, Probation and Parole Officer Andrea McDowell presented Campbell with "Sex Offender Special Instructions," which included conditions that he have no contact with anyone under the age of 18, refrain from use of social networking, complete a sex offender treatment program, and inform those with whom he has a significant relationship of his "sexual offending behavior as directed by" his supervising officer. Campbell did not sign the document setting forth the special instructions for his probation.[5] As noted above, the document McDowell presented to Campbell had the box marked for every condition listed on the pre-printed form.

Taylor testified that she was Campbell's supervising probation officer for about three months in 2020 after she took over his supervision from McDowell. Taylor visited Campbell's home on September 16, 2020, to meet with him. Due to restrictions related to the COVID-19 pandemic, Taylor phoned Campbell to have him come out of the house to verify his address. Campbell agreed to come outside, but then did not appear. Concerned for Campbell's safety as well as her own, Taylor waited outside in her vehicle, but spoke with Campbell by phone.

---

[4] Campbell noted at the hearing, "We provided our own proffer." He consistently had contested the Commonwealth's version of events.

[5] Because Campbell disputed the sex offender conditions, the probation office did not attempt to enforce any of the conditions against him.

- 5 -

Eventually, Campbell appeared in a truck, got out of the vehicle, and fell against the side of the cab. He made a series of statements indicating he did not need supervision but that he wanted to talk to Taylor. He said he was not "flirting with" Taylor and asked her to move her car into the driveway. Campbell's conduct made Taylor "extremely uneasy, given the fact that he was trying to disarm [her] with saying nice things." Taylor remained on the phone with Campbell for a period of time until she drove away and ended the contact. From his demeanor and comments, Taylor was concerned that Campbell was intoxicated or "having some kind of a stroke." She contacted the police to perform a welfare check on Campbell. When Taylor called Campbell the following day, he said that he did not recall her visit to the home.

Taylor stated that the probation office's standard procedure was to assess probationers for sex offender treatment if there was "a sexual allegation in the series of events of the crime" even if there was no conviction for a sex offense. The purpose of this procedure was to "comprehensively ensure" that probationers receive the appropriate treatment to prevent recidivism and to "protect the community." In determining the appropriate services for an individual, the probation officer considered the history of the case, the person's criminal record, and other relevant factors.

Taylor also stated that it is "typical" for all the boxes on the "Sex Offender Special Instructions" form to be checked, so that probationers are "aware of all of the conditions of sex offender supervision." But during the meeting between the probation officer and the probationer, "we explain to [probationers] which ones do and do not apply to them." Taylor further explained that "[i]t's not uncommon for the probation officer to check all boxes and have them sign and not impose all of [the conditions]." When the trial court inquired how a probationer was "supposed to know what they're to do and not do" if the probation officer checks every box for every probationer, Taylor claimed that "for liability reasons we have them acknowledge all of them, because if something were to happen later on that we were aware of and didn't have them go

- 6 -

back and sign it, this way we—It's essentially a way to protect the overall instruction or any future conversation."

Taylor indicated that the narrative of Campbell's underlying offenses contained in the pre-sentence report included an allegation of rape, although he was not convicted for that offense.[6] Taylor testified that Campbell was "resistant to anything that related to sex offender supervision." In her assessment, Taylor considered Campbell's history of substance abuse, the fact that a minor lived in the home with him, and his access to the internet (which in her estimation, correlated to access to victims). Taylor deemed Campbell as being at high risk for sexual violence.

Madalyn Humphreys testified at the hearing as an expert in the field of sex offender treatment. Humphreys conducted a sexual offender intake evaluation in October 2020 upon referral by the probation office. In completing her evaluation, Humphreys considered both the Commonwealth's and Campbell's versions of the incident in question, which involved Campbell's adult female partner, L.B. Specifically, Humphreys relied on information from the pre-sentence report that L.B. alleged to the police that Campbell attacked her while he was intoxicated, held her at knifepoint, and raped her. Campbell denied the allegations to Humphreys, explaining that he and L.B. had an argument but "made up" and had consensual sexual intercourse.

As a component of determining Campbell's "risk for sexual reoffending," Humphreys explored both static and dynamic risk factors. Humphreys stated that together the static and dynamic risk factors "develop a rubric for predicted recidivism." Static risk factors included factors that could not be changed, such as "sex offense history" and circumstances relating to the victim of the sex offense. Dynamic risk factors related to things that are subject to change such as personal

---

[6] We further note that no fact-finder made any finding concerning that allegation because of the disposition of the case.

choices to engage in impulsive or risky behaviors that "increase an individual's risk for sexual reoffending."[7]

Administering both the Static-99R and Static-2002R risk factor assessments upon Campbell, Humphreys concluded he was at average or above average risk for "predicted sex offender recidivism." Humphreys conceded that the Static-99R and the Static-2002R instruments applied to those who have "committed previous sexual offenses" and considered any lapse of time between commission of those offenses. Humphreys affirmed that both instruments were for evaluating "recidivism," and had no validity for a person who had not committed a prior sexual offense.

When completing her evaluation, Humphreys considered numerous factors including Campbell's personal history and social functioning, family and sexual relationships, substance abuse, medical history, judgment, and mental health status and issues. This also included details Campbell had provided to Humphreys regarding his prior intimate relationships and sexual activities. Based upon the evaluation, and concluding that he was at above average risk for "reoffense," Humphreys recommended that Campbell complete two levels of the Sex Offender Treatment Program and submit to sexual history polygraphs, among other things.[8] She confirmed that Campbell's risk "for sexually re-offending" necessarily "assume[d] that he has committed a sexual offense." Humphreys said that she diagnosed Campbell with "Adult Sexual Abuse: Confirmed" based upon the offense for which he was convicted.

---

[7] In the process of being interviewed by Humphreys, details about Campbell's intimate relationships and sexual practices were raised. Both Humphreys and Taylor also noted that Campbell made sexually inappropriate, crass, and flippant comments in his dealings with them.

[8] In addition, Humphreys concluded that Campbell should "participate in a Substance Abuse Evaluation to determine any treatment needs," "participate in a Batter's [sic] Intervention Program," "have no contact with his victims," "have no contact with minors," "not be allowed to view any forms of pornography," "refrain from participating in any type of sexually deviant behavior," and "complete all of the successfully [sic] requirements of his current legal situation."

Campbell argued to the trial court that the sex offender treatment conditions were unreasonable considering the crimes of conviction—domestic assault and battery—and the surrounding circumstances. The trial court found Humphreys' testimony persuasive and compelling, and her conclusion that Campbell was at above average risk for "reoffending" was not based solely on the pre-sentence report narrative of the offenses. The court concluded that the sex offender terms "imposed by probation and recommended" by Humphreys were "entirely reasonable and required for the safety of the public in exchange for Mr. Campbell retaining his liberty versus incarceration."[9] The trial court thus denied Campbell's motion to remove most of the special probation conditions. The trial court removed the requirement that Campbell complete the second phase of sex offender treatment, which would have required acknowledging guilt for a sexual offense. The trial court further ruled that he was not prohibited from contact with his own minor children.

Campbell appeals. He argues that the trial court erred in refusing to find that his supervising probation officers exceeded their authority by imposing sex offender probation conditions when he had never been convicted of a sexual offense. He also maintains that the trial court's decision to impose sex offender probation conditions was unreasonable. We need not rule upon the first issue because our conclusion on Campbell's second claim requires us to reverse the trial court's decision.

## ANALYSIS

"We review conditions of probation imposed by a trial court as part of its sentencing determination for abuse of discretion." *Murry v. Commonwealth*, 288 Va. 117, 122 (2014). A trial court abuses its discretion

---

[9] The trial court further explained its ruling: "To be clear, the [c]ourt going forward now incorporates the terms in Ms. Humph[reys'] report into the order that will be entered today, so there's no question of what I expect Mr. Campbell to comply with."

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Slusser v. Commonwealth*, 74 Va. App. 761, 774 (2022) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).

After a criminal conviction, the trial court "may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." Code § 19.2-303. "This statute authorizes a trial court to impose such reasonable terms and conditions of probation as it deems appropriate." *Murry*, 288 Va. at 122. A reasonable probation condition is one that considers "the nature of the offense, the defendant's background, and the surrounding circumstances." *Id.*

A convicted defendant does not "have a right to be placed on probation under his own terms and conditions." *Fazili v. Commonwealth*, 71 Va. App. 239, 249 (2019). "Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled,'" "but only . . . conditional liberty properly dependent on observance of [probation conditions][.]" *Id.* at 252 (first and second alterations in original) (first quoting *United States v. Knights*, 534 U.S. 112, 119 (2001); and then quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Nevertheless, the Commonwealth's authority to impose conditions on probation is not unfettered. *Murry*, 288 Va. at 124. The conditions imposed must be tailored to the rehabilitation of the specific offender. *Fazili*, 71 Va. App. at 255.

In *Fazili*, as a condition of his probation for aggravated sexual battery of a child under the age of 13, the trial court prohibited the defendant from having or using any device that could access the internet unless approved by his probation officer. 71 Va. App. at 245-46. The record did not show that "computers or the internet played any role in Fazili's offense and the circuit

court articulated no justification for how imposing this restriction on Fazili's fundamental right to free speech would serve any rehabilitative or public safety purpose." *Id.* at 253. This Court concluded that there was no "showing why the broad restriction" on internet use was warranted, and therefore held that the restriction was not "narrowly tailored" to "effectuate specific purposes related to probation." *Id.*

In *Murry*, upon the defendant's numerous convictions for sex offenses against his stepdaughter, the trial court imposed a probation condition requiring him to submit to warrantless searches and seizures of his person or property for the rest of his life. 288 Va. at 121. In an appeal challenging the probation condition, the Supreme Court of Virginia observed that "[b]ecause '[a] [s]tate's operation of a probation system . . . presents "special needs" beyond normal law enforcement' to ensure that probation restrictions are followed, 'departures from the usual warrant and probable-cause requirements' for searches may be justified." *Id.* at 124 (second through fourth alterations in original) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)). "The permissible range of departure, however, 'is not unlimited.'" *Id.* (quoting *Griffin*, 483 U.S. at 875). The Court found that although "the Commonwealth ha[d] a legitimate interest in ensuring that [the defendant] complete[d] a meaningful period of rehabilitation and that society not be harmed by [his] being at large as a sex offender," those interests did not justify the total surrender of the defendant's Fourth Amendment rights. *Id.* at 127. The Court found that the record did not support a conclusion that a complete waiver of the defendant's Fourth Amendment rights was "necessary to facilitate his rehabilitation and protect the public." *Id.* at 128.

Here, the record does not support a finding that special sexual offender probation conditions were necessary or "narrowly tailored" to promote Campbell's rehabilitation or for the

protection of the community.[10]  The trial court imposed supervised probation as a condition of Campbell's partly suspended sentence for two convictions of domestic assault and battery. Applying what Taylor expressly identified as the DOC's criteria for supervising sex offenders, Campbell did not meet the DOC's definition because he is not required to register as a sex offender, does not have a sex offense in his criminal history, and has *not* been "convicted of an offense of a sexual nature."  Thus, the record established that under DOC Operating Procedure 735.3, Campbell was not subject to probation supervision as a sex offender.  Nevertheless, Campbell was referred to Humphreys for a sex offender intake evaluation.

Humphreys then used diagnostic analysis that presupposed Campbell had been convicted of a sexual offense.  Humphreys conceded that the evaluation instruments she used were invalid for those who have not committed a sex offense.  Nonetheless, Humphreys recommended that Campbell complete two levels of the Sex Offender Treatment Program, submit to sexual history polygraphs, and comply with numerous other conditions, including having no contact with minors.  But those restrictions were not tethered to any facts in the record.  The victim of the assaults was Campbell's adult domestic partner.  The record does not suggest that Campbell presented any risk to minors or that his internet use played any role in the crimes of conviction.

Not only was there no prior sexual offense conviction on Campbell's criminal record, the trial court had *expunged* his record of any reference to a sexual offense charge.  In granting Campbell's petition for expungement, the trial court removed from Campbell's criminal record any reference to the sexual offense for which he was charged but not convicted.  *See* Code § 19.2-392.3

---

[10] Although not dispositive here, the record includes testimony regarding a pre-printed form with all the "boxes" checked used with all probationers.  The Court notes that routinely checking every box on a pre-printed form and then picking and choosing which conditions to impose (and when) is not narrowly tailored to the probationer, does not fairly put the probationer on notice of which conditions apply to him, and creates an opportunity for arbitrary enforcement. *See Fazili*, 71 Va. App. at 255 (holding that probation conditions must be narrowly tailored to the rehabilitation of the probationer).

(prohibiting disclosure of expunged records). "Virginia law permits a person charged with a criminal offense to seek the expungement of police and court records relating to a criminal charge if the person has been acquitted or a 'nolle prosequi is taken or the charge is otherwise dismissed.'" *A.R.A. v. Commonwealth*, 295 Va. 153, 157 (2018) (citing Code § 19.2-392.2(A)(1), (2)).[11]

Humphreys' evaluation—performed prior to the expungement—relied upon information from the pre-sentence report that included an unproven allegation that Campbell had sexual intercourse with his domestic partner against her will. The trial court later erroneously relied upon the already-expunged material by finding Humphreys' testimony and conclusions persuasive and imposing the sex offender conditions she recommended, even though at that time, no competent evidence supported her conclusions. As expunged, Campbell's record contained no allegation, much less a conviction, of a sexual offense for the probation supervisors, Humphreys, or the trial court to consider. Indeed, the trial court had found already that Campbell should not be "saddled with" the stigma of such charges.

While the trial court heard testimony that Campbell behaved crassly to Taylor and Humphreys and made sexually inappropriate comments to them, these circumstances alone did not justify imposing sex offender probation conditions. Indeed, no evidence supports the conclusion that Campbell presented a high risk for sex offender "recidivism" because he has

---

[11] The record does not explain why every reference to the expunged offense was removed from every part of the record except the Commonwealth's unproven version of the offense in the pre-sentence investigation report. But the expungement statute provides that:

> If the court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes or may cause circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the *expungement of the police and court records, including electronic records, relating to the charge*.

Code § 19.2-392.2(F) (emphasis added).

never been convicted of a sex offense and Humphreys used diagnostic instruments that were invalid under the circumstances. We thus conclude that the trial court's imposition of sex offender probation conditions was unreasonable in this case and constituted an abuse of the trial court's discretion.[12]

## CONCLUSION

We find that it was unreasonable for the trial court to impose sex offender conditions where Campbell had never been convicted for a sex offense and the trial court had expunged the criminal record indicating that he was charged with one. We reverse the trial court's judgment imposing special sex offender probation conditions and remand the matter to the trial court for further proceedings consistent with this opinion.

*Reversed, vacated, and remanded.*

---

[12] Given our conclusion, we need not consider whether the trial court erred in determining that the probation office had the authority to impose sex offender probation conditions. "[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).